**In re the MARRIAGE OF Shoshana (Eva) A. SALBY, Appellee,**

**and**

**Murry L. Salby, Appellant.**

**No. 03CA0806.**

Colorado Court of Appeals, Div. II.

Oct. 6, 2005.

Certiorari Denied Jan. 23, 2006.

Stephan E. Uslan, Denver, Colorado, for Appellee.

Murry L. Salby, Pro Se.

ROTHENBERG, J.

In this dissolution of marriage action, Murry L. Salby (father) appeals from the trial court's orders regarding maintenance, child support, the allocation of parental responsibility, and the division of marital property. We dismiss the appeal in part, affirm the judgment in part and reverse in part, and remand with directions.

In September 2000, father and Shoshana (Eva) A. Salby (mother) entered into an "Agreement of Marital Separation." A petition for dissolution of the marriage was filed in July 2001, and interim temporary orders were entered in September 2001. Temporary orders were entered in November 2001 under which the parties' child was to reside primarily with mother, and father was ordered to pay family support of $2000 per month.

In August 2002, the court entered permanent orders regarding parenting time and the allocation of parental responsibility. It designated mother as the primary residential parent, awarded father parenting time, and directed that the parties share decision-making responsibility. The marriage was dissolved in November 2002.

In January 2003, mother moved for the forthwith entry of an order continuing family support, alleging that father had stopped paying support after the decree of dissolution entered. The trial court ordered that the temporary orders be continued until entry of written permanent orders and denied father's later motion for reconsideration. In April 2003, the court entered permanent orders on the division of marital property and all other remaining issues. Father appeals the temporary and permanent orders entered by the court.

## I.

As a threshold matter, we address mother's contention that this court lacks jurisdiction (1) to review issues concerning parenting time and the allocation of parental responsibilities because father's appeal was untimely as to the trial court's permanent orders relating to these issues; and (2) to review the court's temporary orders relating to child support and maintenance. We reject her first contention but agree with the second one.

## A.

A final judgment ends the proceeding in which it is entered and leaves nothing further to be done regarding the rights of the parties. *In re Marriage of Rappe*, 650 P.2d 1352 (Colo.App.1982).

As relevant here, absent a final judgment, appeal is only permitted if the trial court certifies that there is no just reason for delay and that the judgment is final for the purpose of appeal. C.R.C.P. 54(b); *In re Marriage of Baier*, 39 Colo.App. 34, 561 P.2d 20 (1977)(upon entry of an order under C.R.C.P. 54(b), decree of dissolution of marriage may be appealed prior to entry of

permanent orders on issues of child custody, support, and division of property).

■ In this case, permanent orders regarding parenting time and the allocation of parental responsibility were entered in August 2002, and the decree of dissolution was entered in November 2002. Permanent orders regarding matters other than parenting time and the allocation of parental responsibility were not entered until April 2003. Because the permanent order entered in August 2002 regarding parenting issues did not resolve all of the issues presented in this proceeding, and was not certified as final pursuant to C.R.C.P. 54(b), father could not have appealed it at that time.

We thus conclude that father's appeal of the permanent order regarding parenting issues was timely and that we have jurisdiction to review it.

### B.

However, we conclude we lack jurisdiction to review the court's temporary orders relating to child support and maintenance.

■ Temporary orders relating to support payments do not terminate automatically upon the entry of a decree dissolving the marriage. They may be continued until the entry of permanent orders relating to support. *See In re Marriage of Price,* 727 P.2d 1073 (Colo.1986)(where court determined child support subsequent to entry of decree of dissolution, temporary child support order was not terminated on date of dissolution). Thus, it was proper for the trial court to continue the temporary orders after entering the decree of dissolution.

■ Nevertheless, temporary orders terminate when permanent orders are entered, and thereafter they may not be appealed. *In re Marriage of Jaeger,* 883 P.2d 577 (Colo. App.1994).

Because the permanent orders relating to child support and maintenance were entered in April 2003, we lack jurisdiction to consider father's appeal of those temporary orders. Thus, the appeal is dismissed with respect to the temporary orders relating to child support and maintenance.

### II.

Father contends the trial court erred or abused its discretion in the manner in which it ordered the marital property to be divided.

### A.

■ He first contends the Agreement of Marital Separation was a marital agreement rather than a separation agreement, and the trial court erred in refusing to enforce its provisions regarding the division of marital property. We disagree.

Generally, an agreement between spouses that is signed by both parties before the filing of an action for dissolution of the marriage or for legal separation is a marital agreement. Section 14–2–302(1), C.R.S.2004. Such an agreement is enforceable unless it was executed involuntarily or there was not a fair and reasonable disclosure of the property or financial obligations of the parties. Section 14–2–307(1), C.R.S.2004.

However, an agreement between spouses that is signed by both parties before the filing of an action for dissolution of the marriage or for legal separation, but in contemplation of dissolution or separation is a separation agreement. *In re Marriage of Bisque,* 31 P.3d 175 (Colo.App.2001); section 14–10–112(1), C.R.S.2004 (an agreement between spouses that is "attendant upon their separation or the dissolution of their marriage," and intended "to promote the amicable settlement of disputes between the parties" is a separation agreement).

A separation agreement is enforceable unless the court, after considering the economic circumstances of the parties and other relevant circumstances, finds it unconscionable. Section 14–10–112(2), C.R.S.2004.

The determination of credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court. *In re Marriage of Lewis,* 66 P.3d 204 (Colo. App.2003). When the trial court's order is supported by competent evidence, it will not

be disturbed on review. *In re Marriage of Jones*, 627 P.2d 248 (Colo.1981).

Here, the parties entered into an agreement titled "Agreement of Marital Separation" which was to "govern their separation under marriage, and, unless revoked . . . the dissolution of that marriage." The trial court found it was a separation agreement.

■ At the hearing on the enforceability of this agreement, the parties gave conflicting testimony regarding their involvement in negotiating and drafting the terms of the agreement, and regarding the information each provided to the other and their knowledge of each other's assets.

The court found that there had not been full disclosure by either party, and that based on the totality of the evidence regarding the value of the property, enforcement of the agreement would result in mother receiving assets valued at $123,000, while father retained over $1 million in total property, including $700,000 in marital property. The court refused to enforce the agreement, finding that father's actions were inconsistent with his obligation to deal fairly with mother, and that enforcement of the agreement would not result in a fair, just, or reasonable division of property between the parties.

The trial court's order is supported by the language of the agreement and by other evidence in the record. Accordingly, we will not disturb it.

### B.

Father next contends the trial court relied upon dated and inaccurate information, failed to include certain of mother's assets, and did not divide equitably the capital gains tax on the increase in the value of father's home. He thus argues that the division of property ordered by the court was inequitable and an abuse of discretion. We conclude further findings are necessary.

■ In a proceeding for dissolution of marriage, the court is required to set apart to each spouse his or her separate property and then divide the marital property in such proportions as the court deems just after considering all relevant factors, including the contribution of each spouse to the acquisition of the marital property, the value of the property set aside to each spouse, the economic circumstances of each spouse at the time the division of property is to become effective, and any increases or decreases in the value of the separate property during the marriage or depletion of the separate property for marital purposes. Section 14–10–113(1), C.R.S.2004. The court may rely on the parties' financial affidavits as well as other evidence to support its findings. *In re Marriage of Dickey*, 658 P.2d 276 (Colo.App. 1982). When no evidence as to the value of a particular asset is presented, the court's failure to include that asset in the property division does not constitute error. *In re Marriage of Page*, 70 P.3d 579 (Colo.App. 2003).

■ The trial court has great latitude to effect an equitable distribution of marital property, and an appellate court may not disturb the trial court's decision absent a clear abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28 (Colo.2001).

Here, both parties entered the marriage with separate property, including homes, bank accounts, and other financial assets. Both parties submitted financial affidavits to the court and testified regarding their assets and expenses. Documentation relating to some of the parties' assets was submitted to the court. Both parties also submitted written closing arguments that included suggestions for an equitable division of marital property. The positions of the parties were widely divergent.

### 1.

■ According to father, the trial court abused its discretion when it included the increase in value of his home as marital property, but did not include the increase in value of mother's home in Israel. We are not persuaded.

At trial, two appraisers testified as to the value of mother's Jerusalem apartment. One testified that the value of the property had declined during the parties' marriage, in part because it was located near Arab settlements and was subject to security concerns. The

other testified that the value of property in that area had increased slightly. The trial court found that mother's property had not increased in value during the parties' marriage, and it might in fact have decreased in value. Therefore the court did not include the property in Israel in its division of the marital property.

Because the court's findings are supported by the record, we perceive no abuse of discretion in the court's determination that the property in Israel had no marital value and should not be included in the property division.

## 2.

 Father also maintains that the trial court abused its discretion when it included the increase in value of his bank and retirement assets as marital property, but did not include the increase in value of mother's assets. We disagree that the court failed to include the increase in the value of mother's assets, and therefore reject father's argument.

In his November 2002 financial affidavit, father listed as part of the family's financial assets certain "Israel accounts" held in mother's name. Father alleged that the balance in such accounts was $2000. In her November 2002 financial affidavit, mother reported holding an account in a Denver bank with a balance of $13,000. She alleged that $10,000 of this was her separate property, and $3000 was marital property. At trial, she was asked how much she had had in her account in Israel at the time of her marriage. She said she had brought "about $8000 or $10,000" to the United States with her, and left "about the same amount" in Israel.

When asked whether she had a pension from her employment in Israel, mother testified that she didn't know what "the rule" might be regarding her right to such a pension, because she had not lived in Israel for ten years, and thought she "might need to pay some for it." No evidence of the value of such a pension was offered by either party.

The court awarded the $2000 in the Israel account to mother, as well as the $3000 identified as the marital portion of the Denver account. The court did not make any award with respect to any pension that mother may have had the right to claim in Israel.

We conclude that the court properly included the marital portion of mother's bank accounts in the property division, and that its determination of the marital portion of those accounts is supported by the evidence. Because there was no evidence before the court regarding the value of a pension in Israel, we further conclude the trial court did not err in omitting that pension from the property division.

## 3.

Father next contends the trial court inaccurately valued certain of the non-retirement financial assets, including the Cisco stock, the World checking account, the H & R money market account, and the Wells Fargo bond. As the trial court noted, the parties took widely divergent positions with respect to the value of these assets. However, we are unable to determine how the court resolved the parties' differences regarding these assets, nor can we determine whether the values determined by the court are supported by evidence in the record. Hence, we conclude further findings are needed.

## 4.

 Father next contends the trial court abused its discretion by failing to take into account the capital gains tax that would be imposed on the increase in the value of father's home in the event of its sale. But father did not raise this issue before the trial court, and it is not properly before us for review. *In re Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992)(arguments not presented to, considered, or ruled on by the trial court may not be raised for the first time on appeal). On remand, the court in its discretion may consider it.

## III.

Father next contends the trial court erred or abused its discretion in the manner in which it (1) calculated the parties' incomes, (2) ordered child support and maintenance,

and (3) continued the temporary orders regarding such support. He maintains that in determining the amount of child support for the purpose of entering permanent orders, the court erred or abused its discretion by attributing to him the combined income of both parties and by averaging his income over several years in order to include income from sources other than his primary employer. We agree in part.

We have already concluded we lack jurisdiction to consider his contentions regarding the temporary orders. However, as to the permanent orders regarding child support and maintenance, we conclude the judgment must be reversed, and the case remanded for further proceedings relating to father's income and further findings by the court.

The trial court can believe all, part, or none of a witness's testimony, even if uncontroverted. *In re Marriage of Bowles*, 916 P.2d 615 (Colo.App.1995). The trial court's factual findings may not be disturbed on appeal unless they are clearly erroneous and unsupported by the record. *In re Marriage of Zisch*, 967 P.2d 199 (Colo.App.1998).

### A.

At the time of the permanent orders hearing on financial matters, the parties had been married for eleven years. Mother was fifty-three years old and earned $2754 per month as a school teacher. She testified that she also received approximately $400 per month in rental income from her apartment in Israel, but she had to pay approximately $100 per month to maintain it. She reported a total income of $37,554 in 2001, including the family support paid by father, and she claimed living expenses of $3689 per month.

The trial court found, with record support, that her gross income—including income from employment and from the rental of her property in Israel—was $3075 per month.

The court also determined, again with record support, the marital value of the parties' property and financial assets, including various retirement assets. It awarded mother a vehicle, two bank accounts totaling $5000, $50,000 in other non-retirement financial assets, and $258,772 in retirement financial as-

sets. The court awarded father a vehicle, the marital value of the marital home, which was $105,500, $127,366 in non-retirement financial assets, and $159,772 in retirement financial assets.

Father nevertheless maintains that mother was voluntarily underemployed, and that the trial court erred in not so finding. We disagree.

Under § 14–10–115(7)(a), C.R.S.2004, income is defined as "actual gross income of a parent, if employed to full capacity, or potential income, if unemployed or underemployed." Section 14–10–115 provides that the trial court shall impute potential income if the parent is "voluntarily unemployed or underemployed."

The term "voluntarily" means "intentionally, of free will." *People v. Martinez*, 70 P.3d 474, 478 (Colo.2003).

Whether potential income should be imputed to a parent is typically a question of fact, and the factual findings of the trial court are entitled to deference on review, if supported by the record. *People v. Martinez, supra*.

A trial court may interpret a parent's lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation. It may also consider whether alternative employment is available, but the other parent does not have the burden of proving that a particular job actually exists. *See In re Marriage of Bregar*, 952 P.2d 783, 785–86 (Colo.App.1997) (affirming trial court's finding that father, who was trained as an attorney, unreasonably discontinued law practice to start a cattle ranch); *see also In re Marriage of Zisch, supra* (upholding trial court's finding that, with little additional education, mother could be re-certified as a teacher); *In re Marriage of Mackey*, 940 P.2d 1112, 1114 (Colo.App.1997)(income should be imputed to mother who significantly reduced her earnings to stay home with the children).

In *People v. Martinez, supra*, 70 P.3d at 480, the court held that a father could not be considered "voluntarily underemployed"

merely because he had been fired from a job for misconduct, and stated:

> The income imputation inquiry must start with whether the parent is shirking a child support obligation. Is the parent unreasonably foregoing higher paying employment that he or she could obtain? If not, the child support obligation commences with actual gross income. If the parent is shirking a child support obligation, the trial court must determine what the parent can reasonably earn and contribute to the child's support. The trial court must examine all relevant factors. These may include: firing and post-firing conduct; the amount of time the parent spent looking for a job of equal caliber before accepting a lower paying job; whether the parent refused an offer of employment at a higher salary; whether the parent sought a job in the field in which he or she has experience and training; the availability of jobs for a person with the parent's level of education, training, and skills; the prevailing wage rates in the region; the parent's prior employment experience and history; and the parent's history of child support payment.

Further, committing an act which leads to unemployment does not automatically render an individual voluntarily underemployed. *See In re Marriage of Hamilton*, 857 P.2d 542 (Colo.App.1993)(ruling that incarceration is just one factor to be considered in determining whether father is voluntarily underemployed); *In re Marriage of Atencio*, 47 P.3d 718, 721 (Colo.App.2002)(holding that a father who was fired for drug use was not voluntarily underemployed solely because he was fired.)

Here, mother was born in Israel, she is an Orthodox Jew, and her primary language is Hebrew. She testified that although she understands English well, she does not speak it well, and that she was employed at a religious school teaching Hebrew. On this record, we therefore conclude the trial court did not err in rejecting father's argument that she could be earning considerably more money at a secular school or university. *See Bassette v. Bartolucci*, 38 Mass.App.Ct. 732, 652 N.E.2d 623 (1995) (trial court did not err in considering father's potential earnings, rather than his actual income, where he voluntarily left his job with the postal service to take a nonpaying job as a missionary in Jamaica); *Goldberger v. Goldberger*, 96 Md. App. 313, 327 624 A.2d 1328, 1335 (1993)(where father of six children was a 32 year-old, healthy, Torah/Talmudic student with many years of higher education who earned no actual income and intended to continue his life of study forever, court concluded, for purposes of the child support guidelines, he was "voluntarily impoverished" because he "has made the free and conscious choice, not compelled by factors beyond his or her control, to render himself ... without adequate resources.").

### B.

▮▮▮ However, we agree with father that the court's findings regarding his income cannot be sustained.

Pursuant to § 14–10–115(7)(a)(I)(A), C.R.S.2004, for the purpose of determining child support, a parent's "gross income" includes income from any source. However, § 14–10–115(7)(a)(I)(C), C.R.S.2004, provides that "gross income" under the child support guidelines "does not include income from additional jobs that result in the employment of the obligor more than forty hours per week or more than what would otherwise be considered to be full-time employment." Thus, the plain language of the statute prohibits the inclusion of income from husband's secondary employment. *In re Marriage of Upson*, 991 P.2d 341 (Colo.App.1999); *In re Marriage of Marson*, 929 P.2d 51 (Colo.App. 1996).

▮▮▮ When there is a substantial fluctuation in a parent's income, or conflicting evidence regarding the amount of the parent's income, the court may consider the parent's past earnings and may calculate an average of such earnings to determine the parent's earnings for the purpose of applying the child support guidelines. *In re Marriage of Rice & Foutch*, 987 P.2d 947 (Colo.App. 1999)(where there is a substantial fluctuation in a parent's income, or some component thereof, the trial court has discretion to con-

sider, or use an average of, past earnings); *In re Marriage of Hannum,* 796 P.2d 57 (Colo.App.1990)(where there was conflicting evidence regarding the reason for the father's decision to discontinue teaching summer courses, the trial court did not abuse its discretion in considering documentation of past earnings to determine his gross income).

Father here is a university professor, and he asserted on his November 2002 financial affidavit that his gross income from his primary employment was $6270 per month. He also reported dividends and book royalties totaling $275 per month resulting in a total gross monthly income of $6545.

Financial documents submitted to the court with the parties' financial affidavits further showed that in 1999, father earned $78,949.54 as a professor and $52,327.90 doing consulting work for his secondary employer. In 2000, his earnings were $80,671.96 and $57,497.73 from the same sources. In 2001, his earnings as a professor were $83,432.01, and his secondary earnings were $57,020.61, for a total income of $140,452.62.

Father admitted that for the past several years, he had increased his income by obtaining additional employment as a consultant. But he testified that after September 11, 2001, the consulting work he had done for about five years was no longer available due to restrictions in government funding for the research grants that had provided his secondary income.

We agree with father that if that consulting work constituted or was tantamount to a "second" job, which was in addition to his full time employment as a professor, such earnings should *not* have been included in his gross income for the purpose of applying the child support guidelines. *See* § 14–10–115(7)(a)(I)(C). On the other hand, if his consulting work was an integral part of his full time employment as a professor and if his "extramurally funded research" was an expectation of his university position, it would not be an abuse of discretion to include such extra income.

The trial court made no specific findings on these issues. It simply found that fa-

ther's claim of earning only $75,240 per year in 2002 (based on his reported monthly gross income of $6270) "coincide[d] questionably" with the dissolution of the marriage and conflicted with the evidence regarding his income during the previous three years. The court then found that under those circumstances, it was appropriate to average his income for the period 1999–2002, and that father's average monthly income during that period was $10,761. We conclude the court's findings are insufficient to determine whether father's extra income, which he claims was in addition to income from his full time employment, should have been included in calculating child support under the guidelines.

C.

We also agree with father that, even if his extra income was inextricably intertwined with his full time employment, the trial court, in effect, found he was voluntarily underemployed, and that this record does not support such a determination.

Despite father's testimony that his consulting employment was no longer available because his NASA-funded grant had been cancelled, the court found that he would be able to obtain such extra employment in the future and imputed that income to him. We conclude the trial court's finding does not consider all factors relevant to imputing income, including the relationship, if any, of that income to father's maintaining his full time position as a university professor.

We also observe that the trial court's calculation of father's gross income appears to be mathematically incorrect. The court determined that father's income for the period 1999 through 2001 averaged $147,103 per year, or $12,258 per month, and for the period 1999 through 2002 (mistakenly identified as 1999 through 2000 in the permanent orders), averaged $129,132 per year or $10,761 per month. A review of father's W–2 forms for the period 1999–2001 indicates that his earnings from all employment for the three-year period totaled approximately $409,898. This yields an average yearly income for the period of approximately $136,632 rather than $147,103. The monthly average for the

1999–2001 period, and the averages for the 1999–2002 period, are correspondingly lower.

On remand, the trial court should conduct further proceedings, at which time both parties shall be given a full opportunity to present all relevant evidence affecting these financial issues. After making the findings of fact discussed above, the court shall then calculate the parties' incomes. If the trial court determines that income should be imputed to father, it shall make specific findings of fact explaining why he is voluntarily underemployed.

We uphold the finding regarding mother's income and the property division. However, we conclude the issues of child support and maintenance are inextricably intertwined. Hence, maintenance must also be reexamined on remand. Cf. In re Singewald's Marriage, 535 P.2d 252 (Colo.App.1975)(concluding awards of maintenance and child support were inextricably intertwined with the property division and the latter cannot be set aside without setting aside the entire order).

## IV.

Father next contends the trial court erred or abused its discretion in the manner in which it determined parenting responsibilities. Mother counters that the matter is moot because in July 2004, the trial court entered new orders relating to parenting time and parental responsibilities. We agree with mother.

An issue is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy. An appellate court will not render an opinion on the merits of an appeal when the issues presented become moot because of subsequent events. In re Marriage of Hartley, 886 P.2d 665 (Colo. 1994).

In October 2003, while this appeal was pending, mother sought a limited remand of the case to the district court for the purpose of entering orders regarding parental responsibility. The remand was granted. Father subsequently filed a motion seeking emergency modification of parenting time including a change in the child's residence, and mother responded with a motion to restrict father's parenting time and grant her sole parental responsibility.

In July 2004, the trial court entered its order on all three motions. The court noted that it had conducted "several extensive evidentiary hearings" on the motions, and that the new special advocate had submitted an initial report as well as updates and addenda to the court. The court then declined to restrict father's parenting time, ordered that mother should be the sole decision-maker for the child, subject to a requirement that she consult in writing with father prior to making major decisions, and ordered the special advocate and the parties to begin the process of identifying a replacement therapist for the child. The court also expressly found that it would not be in the child's best interests to remove him to Israel.

In his appeal of the original orders relating to parenting time and the allocation of parental responsibilities, father asserts that he was not given an adequate opportunity to address the issues before the court, and thus was unable to confront the alleged bias of the original special advocate. Father denies the matter is moot because the issues that he wishes to address have never been properly heard. However, because the permanent orders on parenting time and the allocation of parental responsibilities entered by the trial court in August 2002 have been superseded by the order entered in July 2004, it is apparent that any decision that this court might make regarding the August 2002 orders would have no practical legal effect.

Father's concerns about the alleged bias of the original special advocate and his lack of an opportunity to counter such bias relate only to the orders entered in 2002. With respect to the 2004 order, it appears that father had an opportunity to be heard in the trial court, and that his concerns regarding the original special advocate were addressed by the appointment of a replacement. We therefore conclude his challenge to the 2002 orders is moot.

## V.

Father next contends the trial court denied him an opportunity to prepare for and be

meaningfully heard during the proceedings. He also contends the trial court denied him due process by summarily entering orders without allowing him to be heard, by failing to apply Colorado law properly, and by negligently failing to provide timely orders to him. We disagree.

■ The opportunity to be heard, an inherent element of due process, must be granted at a meaningful time and in a meaningful manner. Litigants are entitled to have sufficient time to make an orderly presentation of their case. *In re Marriage of Finer*, 893 P.2d 1381 (Colo.App.1995).

■ Balanced against the obligation of the trial court to accord each party due process is its need to regulate its calendar and to manage efficiently the case before it. Nevertheless, a court's interest in administrative efficiency may not be given precedence over a party's right to due process. *In re Marriage of Goellner*, 770 P.2d 1387 (Colo. App.1989).

Father contends he was denied the opportunity to prepare for and be meaningfully heard during the proceedings because, among other things, he was "surprised" by the introduction of mother's brief on the agreement of marital separation at the June 2002 hearing, and he had not received a copy of the brief before the hearing. However, father's attorney was given the opportunity to review the brief before the court proceeded with the hearing, and he informed the court that the time allowed for his review would be sufficient.

Father also claims he was surprised by the introduction of the special advocate's notes at the June 2002 hearing, but the special advocate testified that when mother's attorney requested a copy of the notes, the special advocate made two copies of the notes, that he notified father's attorney a copy of the notes was available to him as well, but that father's attorney had not requested the notes. Father's objection to the admissibility of the notes ultimately was sustained.

Father also contends he was surprised by the disclosure of the appraisal of mother's property in Israel at the November 2002 hearing. But the record shows that after extensive discussion regarding untimely disclosure on the part of both parties, the appraisers selected by both parties were allowed to testify, and, after conducting a voir dire of mother's appraiser, father's attorney said he had no objection to the admission of the appraisal.

Father also contends the court unfairly limited the time available to him to present evidence when it reduced the length of the June 2003 hearing. However, father's attorney did not object to the procedure suggested by the court or request a continuance.

In any event, we have concluded remand is necessary, at which time father will have an opportunity to readdress most of the financial issues. Thus, we perceive no basis for reversal for lack of due process.

VI.

Because father's appeal is neither groundless nor frivolous, we deny mother's request that she be awarded attorney fees on appeal. *See* C.A.R. 38(d) ("If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."); *Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925 (Colo.1993).

On remand, however, the trial court should consider mother's request for an award of attorney fees pursuant to § 14–10–119, C.R.S.2004 (court may apportion equitably the costs of dissolution based on the current resources of the parties).

The appeal is dismissed with respect to the temporary orders relating to child support and maintenance, and with respect to the August 2002 permanent orders relating to parenting time and the allocation of parental responsibilities. The April 2003 permanent orders are affirmed with respect to the property division except as set forth above, and reversed with respect to child support and maintenance. The case is remanded for further proceedings and findings in accordance with the views expressed in this opinion.

Judge WEBB and Judge HUME * concur.