The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 8, 2022

**2022COA105**

**No. 21CA1760, *Parental Responsibility Concerning S.Z.S.* — Family Law — Modification of Parenting Time — Child's Integration with Parental Consent**

A division of the court of appeals, as a matter of first impression, clarifies the distinction between agreeing to the modification of the primary residential parent under section 14-10-129(2)(a), C.R.S. 2021, and consenting to the child's integration into the family of the nonresidential parent under section 14-10-129(2)(b).

Court of Appeals No. 21CA1760
Mesa County District Court No. 16DR30036
Honorable William T. McNulty, Judge
Honorable Matthew D. Barrett, Judge

In re the Parental Responsibilities Concerning S.Z.S., a Child,

and Concerning Zofia Elise Tisue,

Appellant,

and

Christopher Michael Smith,

Appellee.

APPEAL DISMISSED IN PART, ORDERS AFFIRMED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TOW
Dailey and Berger, JJ., concur

Announced September 8, 2022

Randy L. Brown, P.C., Randy L. Brown, Grand Junction, Colorado, for
Appellant

Cordell Law, LLP, Dorothy Walsh Ripka, Billie Jo Sowinski, Greenwood Village,
Colorado, for Appellee

¶ 1    In this post-decree parental responsibilities case, Zofia Elise Tisue (mother) appeals the district court's order adopting a magistrate's ruling that modified parenting time. She also appeals the magistrate's ruling that modified decision-making responsibility. This appeal requires us to consider an issue not previously addressed by an appellate court in this state: Can a parent be found to have consented to a child's integration into the other parent's family even though the parents only agreed that the child would live with and be cared for by the other parent on a temporary basis?

¶ 2    Because we answer this question in the affirmative, we affirm the order concerning parenting time. In addition, we dismiss as moot the portion of mother's appeal concerning decision-making responsibility. And we remand the case for further proceedings on mother's request for appellate attorney fees and costs.

I.    Relevant Facts

¶ 3    Mother had one child, S.Z.S., with Christopher Michael Smith (father), and, in 2017, the magistrate entered permanent orders allocating parental responsibilities. The magistrate gave mother primary residential care and sole decision-making responsibility for

1

the child, and father received parenting time during alternating weekends and school breaks.

¶ 4 Approximately six months later, mother relocated to Minnesota with the child, and the parties stipulated to a modified parenting time plan. Under the modified plan, the child lived with mother during the school year, and father had parenting time during the child's school breaks. The magistrate approved this modified plan.

¶ 5 The following summer, mother's partner experienced health problems, and mother indicated that she was struggling to provide care for the child and her partner. The parties agreed that the child, who was then six years old, would live primarily with father and attend first grade in Colorado. Mother exercised limited parenting time with the child during this time.

¶ 6 In the summer of 2019, the parties agreed that the child would remain with father and complete second grade in Colorado. They executed a written stipulation memorializing this agreement and asserted that, in the fall of 2020, the child would return to school in Minnesota with mother. The magistrate approved the parties' stipulation.

¶ 7 In August 2020, father sought to have the child remain with him in Colorado. But the magistrate ordered the parties to resume their previous parenting time plan, and the child returned to Minnesota. Shortly after the magistrate's ruling, father filed a motion to modify parenting time, requesting primary residential care of the child. He argued that, over those two years, the child had been integrated into his family with mother's consent and that it was in the child's best interests to reside primarily with him during the school year.

¶ 8 After a three-day hearing, the magistrate granted father's motion to modify parenting time. The magistrate had concerns with mother's instability and the risks this posed to the eight-year-old child. He then found that father could better provide for the child's long-term needs and that it was in the child's bests interests to allocate to him primary residential care of the child. The magistrate allocated to mother parenting time generally over the child's school breaks. The magistrate also modified decision-making responsibility, directing the parties to jointly make all major decisions for the child.

¶ 9    Mother petitioned the district court to review the magistrate's order.  The district court adopted the portion of the order modifying parenting time.  It concluded that the magistrate applied the correct legal standard and that the record supported the child's integration into father's family with mother's consent.

¶ 10    In a later order, the district court determined that the magistrate's ruling concerning decision-making responsibility had to be modified.  It explained that, in the permanent orders, the magistrate had made a finding of domestic violence but had then failed to consider this finding when modifying decision-making responsibility.  The court set an evidentiary hearing to resolve the issue, but before the hearing, the parties stipulated to joint decision-making responsibility.  The district court adopted their stipulation.

## II.    Standard of Review

¶ 11    Our review of a district court's order adopting a magistrate's ruling is, in effect, a second layer of appellate review.  *In re Marriage of Evans*, 2021 COA 141, ¶ 39.  We review de novo whether the court applied the correct legal standard.  *In re Parental Responsibilities Concerning E.S.*, 264 P.3d 623, 626 (Colo. App.

4

2011). We also review de novo the court's conclusions of law, but we accept the magistrate's factual findings unless they are clearly erroneous. *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1132 (Colo. 2010). A court's factual finding is clearly erroneous when it has no record support. *Evans*, ¶ 39.

### III. Modifying Parenting Time

¶ 12 Mother contends that the magistrate erred by modifying parenting time because he did not apply the legal standard for consensual integration when issuing his ruling and the record did not establish that the child had been integrated into father's family with mother's consent. We disagree.

### A. Legal Principles

¶ 13 A court has broad discretion to modify existing parenting orders, and we must exercise every presumption in favor of upholding its decision. *See In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010); *see also In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

¶ 14 The child's best interest is the controlling factor for a court when determining parenting time. *See* § 14-10-129(1)(a)(I), (2), C.R.S. 2021; *Barker*, 251 P.3d at 592; *see also* § 14-10-124(1.5)(a),

C.R.S. 2021 (best interests factors). When a parent seeks a substantial modification of parenting time that also changes the parent with whom the child primarily resides, the court must retain the prior parenting time order unless there has been a change in circumstances and, as relevant here, the child has been integrated into the family of the parent seeking modification with the consent of the other parent. § 14-10-129(2)(b).

¶ 15     The child's integration with parental consent is a factual determination based on the totality of the circumstances. *See In re Marriage of Chatten*, 967 P.2d 206, 208 (Colo. App. 1998); *In re Marriage of Pontius*, 761 P.2d 247, 249 (Colo. App. 1988). The court considers the frequency, duration, and quality of the child's contacts with each parent; which parent is making decisions concerning the child's health care, education, religious training, and general welfare; and the child's views as to which environment constitutes his or her home. *Chatten*, 967 P.2d at 208; *Pontius*, 761 P.2d at 249-50.

¶ 16     Integration, therefore, is more than a parent's expanded visitation with the child. *Chatten*, 967 P.2d at 208; *Pontius*, 761 P.2d at 249. It includes the parent performing normal parental

6

duties and guiding the child physically, mentally, morally, socially, and emotionally. *Chatten*, 967 P.2d at 208; *accord Pontius*, 761 P.2d at 249. As well, the time spent by the child with the parent seeking primary residential care "must be of sufficient duration that the child has become settled into the home of that parent as though it were his or her primary home." *Chatten*, 967 P.2d at 208.

¶ 17 The requirement of the other parent's consent is satisfied when that parent voluntarily places the child with the noncustodial parent and willingly permits the child to become integrated into the new family. Id. The parent's consent does not need to be explicit. See id. Rather, it "may be implied from a voluntary transfer of custody that results in the child's integration into" the other parent's family. *Id.*

B.     The Magistrate Applied the Correct Legal Standard

¶ 18 Mother argues that because the magistrate made no specific finding that the child had integrated into father's family with mother's consent, the magistrate failed to apply the correct legal standard. We are not persuaded.

¶ 19 In his ruling, the magistrate expressly set forth the applicable law for modifying parenting time. Specifically, the magistrate

7

recognized that a change to the prior parenting time order must serve the child's best interests and stated that the magistrate "must retain the prior schedule unless [he] finds that [the] child has been integrated into the family of the moving party with consent of the other party." The magistrate then analyzed and made findings on the best interests factors enumerated in section 14-10-124(1.5)(a).

¶ 20    In doing so, the magistrate found that

- the child had "a close relationship" with father and "important relationships" with the other members of father's household, including father's wife and his other children;

- the child was "comfortable" in father's home and "very familiar" with the routine at his home;

- father provided for the child's needs, was engaged in her medical and dental care, and was involved in the child's education;

- father indicated that the child was "completely integrated into his home";

- father had consistently provided "suitable care" for the child;

8

- mother had relinquished primary care of the child to father in 2018 and "was somewhat disengaged" from the child's life in Colorado; and

- mother had "relatively sporadic and modest amounts of parenting time" with the child while the child lived with father.

¶ 21 Even though made in relation to the best interests factors, these findings demonstrate that the magistrate applied the law concerning the child's integration with mother's consent and considered these circumstances when he determined that modifying parenting time was in the child's best interests. *See Chatten*, 967 P.2d at 208; *Pontius*, 761 P.2d at 249-50. Therefore, although the magistrate did not make a specific finding, the order indicates that he implicitly found that the child had been integrated into father's family with mother's consent. *See Chatten*, 967 P.2d at 208; *Pontius*, 761 P.2d at 249-50; *see also In re Marriage of Finer*, 920 P.2d 325, 328 (Colo. App. 1996) (recognizing that a court's finding may be implicit in its ruling).

¶ 22 Moreover, the magistrate later stated he was modifying decision-making responsibility "[p]ursuant to [section] 14-10-

131(2)(b)," C.R.S. 2021. This section, similar to section 14-10-129(2)(b), directs the court to retain the allocation of decision-making responsibility unless "[t]he child has been integrated into the family of the petitioner with the consent of the other party." § 14-10-131(2)(b). By relying on section 14-10-131(2)(b), the magistrate clarified that he found the child had been integrated into father's family with mother's consent.

¶ 23    Still, mother contends that the magistrate must make an express finding on the child's integration with mother's consent. While such an express finding is preferable, nothing in section 14-10-129(2)(b) requires one. When, as here, the magistrate's finding demonstrates the application of the statute and is sufficiently explicit to allow us to review that determination, the magistrate's implicit finding suffices. *See Finer*, 920 P.2d at 328; *cf. In re Marriage of Rodrick*, 176 P.3d 806, 813-14 (Colo. App. 2007) (affirming a court's parental responsibilities decision when its findings sufficiently showed that it considered the statutory criteria, even though it did not make specific findings on each factor).

¶ 24    Mother also argues that the magistrate had to first make a finding on the child's consensual integration before it could address

the child's best interests. While we generally decline to review an issue not raised until the reply brief, *see In re Marriage of Drexler*, 2013 COA 43, ¶ 24, we are not convinced that such a two-step inquiry is demanded by section 14-10-129(2)(b). Indeed, nothing in section 14-10-129(2)(b) forbids a court from addressing the child's integration during its discussion of the best interests factors or demands that the court employ a two-step inquiry when addressing a request to modify parenting time. And, beyond citing this statute, mother directs us to no legal authority supporting her argument.

¶ 25     We therefore are not persuaded that the magistrate failed to apply the correct legal standard concerning the child's integration into father's family with mother's consent.

### C.    The Record Supports a Finding of the Child's Integration into Father's Family with Mother's Consent

¶ 26     Mother contends that the record fails to support findings that the child was integrated into father's family and that mother had consented to any integration. We disagree.

#### 1.    The Child's Integration into Father's Family

¶ 27     Father testified that for almost two years, the child resided primarily with him, he was responsible for the child's care and

11

welfare while with him, and he made many of the day-to-day decisions concerning the child during that time. He further testified that the child had many "connections and relationships" in Colorado and that when the child lived with him, mother had limited parenting time. In addition, father's wife testified that she and father have a strong, bonded relationship with the child; the child and the child's older half-sibling were "inseparable"; and the child and her younger half-sibling, who was born while the child lived with father, were constantly together. Father's other family members also confirmed that the child had a strong connection with father's family. And the child's second grade teacher testified that father and his wife were engaged in the child's education and that the child had a very close relationship with father's family.

¶ 28    From this evidence, the magistrate could reasonably find that the child had become settled into father's family as though it was her primary home and that during the approximately two years the child lived with father, father took care of the child and performed the normal parental duties. *See Chatten*, 967 P.2d at 208. The record, therefore, supports the determination that the child had become integrated into father's family. While mother highlights

conflicting evidence that could support a contrary finding, we may not reweigh the magistrate's resolution of the conflicts in the evidence. *See Evans*, ¶ 45.

¶ 29    To the extent mother asserts that the child's integration into father's family "legally terminated" when the child returned to Minnesota in 2020, mother develops no legal or factual argument in support of this assertion. We therefore will not address it. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development.").

¶ 30    Thus, contrary to mother's contention, there is record support for the finding that the child was integrated into father's home and family.

### 2.    Mother's Consent

¶ 31    Nor do we agree with mother that no evidence showed that she consented to the child's integration. It was undisputed that mother voluntarily transferred primary care of the child to father in 2018, and she agreed to extend father's primary care throughout the 2019-2020 school year. Following this voluntary transfer, the record, as explained above, shows that the child was integrated into

father's family. As a result, the magistrate could reasonably infer that mother consented to the child's integration into father's family. *See Chatten*, 967 P.2d at 208-09.

¶ 32 Mother argues that this is insufficient to establish her consent because the parties' agreements to transfer the child to father were intended to be only temporary. But mother's argument misunderstands what consent to integration means. It does not mean consent to change the parent with whom the child resides the majority of the time. An agreement to change the primary residential parent is the modification criterion in section 14-10-129(2)(a). If mother's view were correct, section 14-10-129(2)(b) would be superfluous — an outcome we do not believe the General Assembly intended. *See Wolford v. Pinnacol Assurance*, 107 P.3d 947, 951 (Colo. 2005) (noting that we avoid interpretations that render statutory provisions redundant or superfluous).

¶ 33 Rather, section 14-10-129(2)(b) applies when a parent consents to the other parent "perform[ing] . . . normal parental duties . . . and guiding the child[] physically, mentally, morally, socially, and emotionally." *Chatten*, 967 P.2d at 208. Mother clearly did so when she sent the child to live with father on a full-

time basis for two years, during which she exercised limited parenting time. And, with mother's consent, the child became settled into father's home as though it was her primary home. *See id.*

¶ 34    That the parties' agreement was for only a temporary transfer of the child's primary care to father does not change the fact that the child integrated into father's family, nor does it change the fact that mother consented to the child doing so. The parents' subjective intentions concerning the length of time a child will reside with a particular parent are not dispositive of the issue because the consent requirement is intended to serve the "narrow purpose" of avoiding a noncustodial parent's kidnapping of the child. *Id.*; *see* Unif. Marriage & Divorce Act § 409 cmt. (amended 1973), 9A pt. II U.L.A. 440 (1998). "Instead, the consent requirement is satisfied when the custodian has voluntarily placed the child with the non-custodial parent and willingly permitted the child to become integrated into the new family." *Chatten*, 967 P.2d at 208.

¶ 35    We are not persuaded otherwise by mother's reliance on several Illinois cases in support of her argument. *See In re Marriage*

*of Wechselberger*, 450 N.E.2d 1385, 1391 (Ill. App. Ct. 1983); *In re Marriage of Hill*, 434 N.E.2d 527, 531 (Ill. App. Ct. 1982); *People ex rel. Bukovic v. Smith*, 423 N.E.2d 1302, 1307-08 (Ill. App. Ct. 1981); *see also In re Custody of Dykhuis*, 475 N.E.2d 1107, 1110 (Ill. App. Ct. 1985).

¶ 36    None of these cases stands for the proposition that when a custodial parent agrees to the child living temporarily with the noncustodial parent for an extended time, the temporary nature of that agreement necessarily defeats a claim that the custodial parent consented to the child's integration.

¶ 37    Of these cases, only *Wechselberger* (on which mother primarily relies) discussed the point of contention at issue here: whether the primary custodial parent's agreement to temporarily permit the child to live with the other parent, during which time the custodial parent had limited parenting time, amounts to integration with consent. But that case is unhelpful to mother for several reasons.

¶ 38    First, the posture of that case was the opposite of that here: the noncustodial parent in *Wechselberger* had failed to obtain the modification sought. 450 N.E.2d at 1388. So the issue was whether the trial court's determination that the modification was

16

*not* in the child's best interest was "against the manifest weight of the evidence or an abuse of discretion." *Id.* at 1391.[1]

¶ 39     Second, although the relevant Illinois statute had previously been consistent with Colorado's law, it had been amended such that the governing statute in *Wechselberger* no longer required a showing of integration by consent. *Id.* at 1388-89 (citing Ill. Rev. Stat. 1981, ch. 40, par. 610(b) (effective until July 1, 1982)). Instead, the statute governing the motion in that case required a showing "'by clear and convincing evidence' . . . that a change has taken place in the circumstances of the child or the child's custodian and that the modification is needed to serve the best interests of the child." *Id.* at 1389 (quoting Ill. Rev. Stat. 1981, ch. 40, par. 610(b) (effective July 1, 1982)). As the court observed, "Integration into the petitioner's family with consent . . . is no longer required to be proved, although it may be a factor the court may

---

[1] The fact that the appellate review posture was the opposite of this case is significant. When reviewing a court's factual findings and exercise of discretion, an appellate court is deferential to the trial court's decision. Whether the evidence could have supported the opposite finding or a different discretionary act is irrelevant. Put another way, the fact that an appellate court found that the record supported a particular finding in no way suggests that it would not have also supported a different finding.

take into account in determining whether a change in circumstances has occurred." *Id.* at 1391. Thus, the Appellate Court of Illinois's discussion of whether the mother had consented to the child's integration into the father's family was arguably dicta.

¶ 40 And, in any event, the court ultimately acknowledged that integration by consent may have occurred, observing that "*while a change of circumstances may have been proved,* it is implicit in the trial judge's decision that a modification was not necessary for the best interest of the children." *Id.* (emphasis added). In other words, the decision in *Wechselberger* ultimately rested on the trial court's determination of the child's best interests, not on whether there was integration by consent — again suggesting that the entire discussion of integration was dicta.

¶ 41 In short, *Wechselberger* cannot bear the weight mother places on it.

¶ 42 Unlike the circumstances present in *Wechselberger,* the totality of the circumstances here demonstrated that mother consented to the child's integration into father's home and family. Even if the parties contemplated only a temporary change in the child's custodial arrangement, their agreements support such a

18

finding, particularly when the child primarily resided with father for almost two years and during that time father provided her primary care and mother exercised limited parenting time. *See Chatten*, 967 P.2d at 208-09.

¶ 43 We therefore do not agree that the magistrate clearly erred by finding that mother consented to the child's integration.

¶ 44 Mother also takes issue with the magistrate's finding that she "did not address how she helped [the child] adjust to her fourth school in four years after her return to Minnesota in August 2020." While mother points to evidence that she assisted the child with her reading struggles, she directs us to no evidence that refutes the magistrate's finding concerning the child's adjustment to her new school. *See Evans*, ¶ 45.

¶ 45 Mother further argues that the magistrate's ruling is contrary to the "goals and policies" of sections 14-10-124 and 14-10-129, because it will disincentivize a parent with primary custody from being willing to agree to additional parenting time with the other parent. Mother did not raise this argument until her reply brief, however, and we therefore do not address it. *See Drexler*, ¶ 24.

¶ 46 That being said, it is important to note that the mere fact that one parent consented to the child's integration into the other parent's home does not automatically mean that the parent seeking the change of primary parent will succeed. It simply means that the decision can be made based on the best interests of the child, without requiring that the party seeking the modification show endangerment. This makes sense in light of the fact that, given the integration of the child into the new family, the interest in finality of the original order is less significant. *See* Unif. Marriage & Divorce Act § 409 cmt., 9A pt. II U.L.A. at 439 (noting that the restrictions on modifying the primary parent are "designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest").

¶ 47 In sum, the district court applied the correct legal standard and made factual findings that have record support. Thus, the magistrate did not err by modifying parenting time.

IV. Modifying Decision-Making Responsibilities

¶ 48 Mother next contends that the magistrate erred by modifying decision-making responsibility. In response, father argues that the parties' joint decision-making responsibility stipulation, adopted by

the district court after the magistrate's ruling, rendered this issue moot. We agree with father and dismiss this portion of the appeal.

¶ 49 Whether an issue is moot is a question of law that we review de novo. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 23; *see also USAA v. Parker*, 200 P.3d 350, 356-57 (Colo. 2009) (recognizing that mootness involves the court's subject matter jurisdiction and may be raised at any time).

¶ 50 We will not render an opinion on the merits of an issue when subsequent events have rendered the issue moot. *In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005); *see also Colo. Mining*, ¶ 33 ("The power of judicial review simply does not extend to moot questions."). "An issue is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy." *Salby*, 126 P.3d at 301.

¶ 51 The parties' stipulation resolved the issue of decision-making responsibility. *See Lego v. Schmidt*, 805 P.2d 1119, 1125 (Colo. App. 1990) (recognizing that when the parties settle the dispute which is the subject of an appeal, the issue is moot). And the court's order adopting that stipulation superseded the magistrate's ruling modifying decision-making responsibility. *See Salby*, 126

P.3d at 301. Thus, any decision we render as to the merits of the magistrate's ruling would have no practical legal effect. Therefore, this portion of mother's appeal is moot.

## V. Appellate Attorney Fees and Costs

¶ 52 Mother requests appellate attorney fees and costs under section 14-10-119, C.R.S. 2021, based on the financial disparity between the parties. We disagree with father that mother's request fails to set forth a factual basis for her request. *See* C.A.R. 39.1; *see also In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) (providing that section 14-10-119 empowers the court to equitably apportion costs and attorney fees between the parties based on their relative abilities to pay). However, the district court is better equipped to determine the factual issues regarding the parties' current financial resources. Thus, we remand this issue. *See* C.A.R. 39.1; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

¶ 53 For his part, father seeks an award of appellate attorney fees and costs under section 13-17-102(4), C.R.S. 2021, arguing that mother's appeal lacked substantial justification. While we reject mother's arguments, we decline to assess attorney fees and costs under section 13-17-102(4). *See In re Estate of Shimizu*, 2016 COA

163, ¶ 34 ("[A]n award of fees on appeal is appropriate only in clear and unequivocal cases where no rational argument is presented . . . ."); *see also In re Parental Responsibilities Concerning D.P.G.*, 2020 COA 115, ¶ 37 n.1 (recognizing that section 13-17-102 does not provide for an award of costs). (That being said, in light of our disposition, father is entitled to appellate costs — though not attorney fees — pursuant to C.A.R. 39(a).)

## VI. Disposition

¶ 54 We dismiss the appeal in part and affirm the court's order adopting the magistrate's ruling modifying parenting time. The case is remanded to the district court for further proceedings on mother's request for section 14-10-119 appellate attorney fees and costs.

JUDGE DAILEY and JUDGE BERGER concur.