23CA1798 Marriage of Schweitzer 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1798
Arapahoe County District Court No. 21DR31311
Honorable Cynthia Mares, Judge

---

In re the Marriage of

Lindsay Schweitzer,

Appellee,

and

Neal Schweitzer,

Appellant.

---

APPEAL DISMISSED IN PART
AND JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Bernard* and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Hogan Omidi, PC, Kathleen A. Hogan, Denver, Colorado, for Appellee

Law Offices of Randy B. Corporon, P.C., Randy B. Corporon, Kevin J. Farrell, Aurora, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Neal Schweitzer (husband) appeals the district court's judgment that dissolved his marriage with Lindsay Schweitzer (wife). We affirm the judgment and dismiss the portion of husband's appeal that challenges the court's temporary orders.

I.     Relevant Facts and Procedural History

¶ 2     In 2021, wife petitioned the court to dissolve their over thirty-year marriage. A year later, wife asked the court for temporary financial orders. The court held a one-hour hearing, allowing each party to have thirty minutes. After the hearing, the court ordered husband to pay wife temporary maintenance of $3,000 per month, continue to pay the marital debts, and deposit his income into a joint bank account. The court also ordered that wife shall be given full access to the parties' accounts and could withdraw $20,000 to pay her attorney fees and costs.

¶ 3     A few months later, the court conducted the permanent orders hearing and dissolved the marriage. In its permanent orders, the court divided the approximately $6.2 million marital estate by allocating 53% of the equity to wife and the remaining 47% to husband. To do so, the court allocated the estate as follows:

| Marital Asset/Debt | Wife's Allocation | Husband's Allocation |
|---|---|---|
| Real Estate | $1,180,000 | $1,300,000 |
| Vehicles | $7,000 | $1,354 |
| Bank Accounts | $7,148 | $4,543 |
| Investment Accounts | $1,376,498 | $1,139,079 |
| Retirement Accounts | $425,797 | $210,830 |
| Other Assets | $191,017 | $192,363 |
| Business Assets | $131,020 | $116,188 |
| Marital Debts | -$1,919 | -$23,256 |
| Total Net Equity | $3,316,561 | $2,941,101 |

¶ 4 The court also adopted the parties' stipulation to sell husband's business, which they believed was worth approximately $750,000, and it ordered them to divide the proceeds 53%/47% in favor of wife.

## II. Temporary Orders

¶ 5 Husband contends that the district court erred by unreasonably restricting the parties' time at the temporary orders hearing. He argues that this restriction prevented him from presenting necessary evidence and that the court's temporary

orders resulted in an inequitable windfall to wife. We dismiss this portion of his appeal.

¶ 6 A party must file a notice of appeal within forty-nine days of the entry of judgment from which they appeal. C.A.R. 4(a)(1). A court's temporary orders ruling as to maintenance, attorney fees, and other financial support obligations is a final judgment when entered. *See In re Marriage of Mockelmann*, 944 P.2d 670, 671 (Colo. App. 1997); *In re Marriage of Nussbeck*, 899 P.2d 347, 348 (Colo. App. 1995). The district court entered temporary orders in December 2022. Husband needed to appeal that judgment within forty-nine days, but he did not initiate this appeal until October 2023. That was too late. We therefore do not have jurisdiction to review husband's untimely appeal. *In re Marriage of Roddy*, 2014 COA 96, ¶ 7.

¶ 7 Moreover, the court's temporary orders terminated when the court issued its permanent orders. *See In re Marriage of Salby*, 126 P.3d 291, 295 (Colo. App. 2005); *In re Marriage of Jaeger*, 883 P.2d 577, 579 (Colo. App. 1994). Thus, any opinion we now render concerning the court's time limitations at the temporary orders

3

hearing would have no practical legal effect. *See Salby,* 126 P.3d at 295; *Jaeger,* 883 P.2d at 579.

¶ 8    We therefore dismiss this portion of husband's appeal.

### III.    Property Division

¶ 9    Husband next contends that the district court inequitably divided the marital estate in wife's favor and failed to make findings sufficient to support its allocation. We disagree.

### A.    Governing Legal Standards

¶ 10    The court has great latitude to equitably divide the marital estate in such proportions as it deems just. *See* § 14-10-113(1), C.R.S. 2024; *LaFleur v. Pyfer,* 2021 CO 3, ¶ 61. The property division must be equitable, but it does not need to be equal. *In re Marriage of Wright,* 2020 COA 11, ¶ 3. "The key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Gallo,* 752 P.2d 47, 55 (Colo. 1988).

¶ 11    To achieve an equitable division, the court considers all relevant factors, which may include the parties' contributions to the acquisition of marital property, the value of property set aside to each party, the parties' economic circumstances, and the depletion of a party's separate property for marital purposes.

4

§ 14-10-113(1)(a)-(d). The weighing of these factors is within the court's sound discretion. *In re Marriage of Smith*, 2024 COA 95, ¶ 67. The court does not need to make specific findings as to each factor so long as its findings are sufficient to allow us to determine whether its decision is supported by competent evidence. *Id.* at ¶ 71.

¶ 12 We may not disturb a court's property division absent a showing that the court abused its discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplies the law. *Id.*; *see also Hall v. Moreno*, 2012 CO 14, ¶ 54 (explaining that, when reviewing a court's discretionary decision, we consider whether the decision fell within the range of reasonable options).

## B. Sufficient Findings

¶ 13 At the permanent orders hearing, wife argued that she had made significant contributions to the marriage and that, as a result, it was equitable for the court to allocate more of the marital estate to her. She testified that when she married husband, she had significant assets from her premarital inheritances and that she

contributed around $1 million of her separate property to the marriage. She explained that, during the marriage, they used her inheritances to acquire marital assets, fund their lifestyle, and amass their $6.2 million marital estate. She also explained that she contributed her premarital home to the marriage and that they generated rental income from that property. She further highlighted her substantial contributions as a homemaker and described how that helped husband grow his business.

¶ 14    After the hearing, the court considered the applicable law and determined that a disproportionate allocation was equitable. In doing so, the court set aside $99,000 as husband separate property (the remaining balance of an inheritance he received), and it adopted the parties' agreement to set aside certain artwork and furnishings to wife as her separate property. The court then made detailed findings concerning the values of the parties' assets and debts, and it allocated these items between the parties to effectuate a 53%/47% allocation in wife's favor. The court also noted the parties' disproportionate incomes, finding that wife was presently earning $2,566 per month as a preschool teacher and that husband

6

was earning approximately $16,000 per month from his business, which was expected to continue until the business was sold.

¶ 15    While the court's findings were limited, those findings, along with the record of the proceedings, sufficiently demonstrate that the court considered the relevant factors and that, as explained below, the court's division was supported by the evidence. *See Smith*, ¶ 71. The court made express findings concerning the separate property set aside to each party and the parties' economic circumstances. *See* § 14-10-113(1)(b), (c). In addition, implicit in the court's disproportionate allocation of the marital equity was the court's acceptance of wife's rationale for a higher proportion of the marital estate. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 23 (recognizing that a court's finding may be implicit in its ruling); *see also In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (presuming that the court considered all the evidence presented when arriving at its decision). That is, the court implicitly found that wife's contribution to the acquisition of marital property and the depletion of her separate property for marital purposes warranted the unequal allocation. *See* § 14-10-113(1)(a), (d).

¶ 16    Still, husband claims that the court "ignored the household furnishing and art" and that this was "[a]nother example" of the court's "inadequate analysis." But husband stipulated that these items were wife's separate property. The court accepted that stipulation, and it set aside these items to wife as her separate property before dividing the marital estate. *See Smith*, ¶ 40 (noting that separate property is shielded from the court's division of the marital estate). To the extent husband suggests that doing so was improper or that the court needed to assign some value to these assets, he does not develop any legal argument in support of his suggestions or direct us to any legal authority showing that the court reversibly erred. *See S.Z.S.*, ¶ 29 (declining to address an undeveloped argument); *Biel v. Alcott*, 876 P.2d 60, 64 (Colo. App. 1993) ("An appealing party bears the burden to provide supporting authority for contentions of error asserted on appeal . . . .").

¶ 17    The court therefore made findings sufficient to support its disproportionate allocation of the marital estate. *See Smith*, ¶ 71.

## C. Equitable Allocation

¶ 18 Husband further challenges the court's disproportionate allocation. But because the record supports the court's decision, we may not disturb it. *See Medeiros*, ¶ 28.

¶ 19 It was undisputed that husband retained over $99,000 as his separate property and that, at the time of the dissolution, his income substantially surpassed wife's income. In addition, the evidence supported wife's substantial contributions to the acquisition of marital property and her depletion of her separate property for that purpose. *See* § 14-10-113(1)(a), (d). In particular, wife testified that, during the marriage, she put her premarital inheritance into a joint investment account and gifted her premarital home to the marriage. She said that the parties used the money from her inheritance to purchase their marital home, fund husband's business, and support their lifestyle. She also said that the parties used her premarital home as a rental property and that, during the marriage, she paid off the home's debt with the money she received from another inheritance. In addition, she testified that her financial contributions supplemented their incomes, which allowed them to grow the value of their marital

estate and live a comfortable lifestyle. And she described being a stay-at-home mother and caring for the household. Given these circumstances, the court acted within its discretion to allocate 53% of the marital equity to wife. *See In re Marriage of Stumpf*, 932 P.2d 845, 849 (Colo. App. 1996) (determining that a party's significant contribution to the marital equity supported the court's disproportionate property division).

¶ 20 Husband, however, attempts to characterize the court's allocation as an improper reimbursement to wife for her separate property contributions, and, relying on *In re Marriage of Cardona*, 321 P.3d 518, 521-22 (Colo. App. 2010), *aff'd on other grounds*, 2014 CO 3, he argues that the allocation cannot stand. But his argument is misplaced. Unlike *Cardona*, the court did not set aside any of the marital equity to wife as her separate property. *See id.* The court merely allocated to wife a larger share of the marital equity, and such an allocation was within the court's discretion. *See* § 14-10-113(1)(a), (d); *Stumpf*, 932 P.2d at 849.

¶ 21 Husband also highlights that he made contributions to the marital estate and that his contributions warranted a 50%/50% allocation. But it was for the district court, not us, to weigh the

conflicting evidence and the relevant factors when determining an equitable allocation of the marital estate. *See Smith*, ¶ 67. When, as here, the court's findings and decision are supported by the record, we may not set them aside. *See In re Marriage of Evans*, 2021 COA 141, ¶ 45.

¶ 22     Finally, husband generally asserts that the court's allocation was "replete with errors involving both valuation and arithmetic." Because he develops no legal or factual argument in support of this assertion, we will not further address it. *See S.Z.S.*, ¶ 29.

¶ 23     We therefore are not persuaded that the court abused its discretion by allocating to wife a disproportionate share of the marital estate. *See In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by the [district] court in [its] division of property . . . unless there has been a clear abuse of discretion.").

## IV.   Disposition

¶ 24     We affirm the district court's judgment and dismiss the portion of husband's appeal concerning the temporary orders.

JUDGE BERNARD and JUDGE GRAHAM concur.

11