The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA25

**No. 17CA1996, *Estate of Yudkin* —Probate — Intestate
Succession; Family Law — Common Law Marriage**

In this estate case, the division concludes that the district
court misapplied *People v. Lucero*, 747 P.2d 660 (Colo. 1987), when
in determining if the decedent and appellant were common law
married, it gave more weight to the fact that the parties filed
separate federal and state tax returns than to the facts that they
agreed to be married, cohabitated, and had a reputation in their
community as husband and wife.  The division holds that under
*Lucero*, if there is an agreement to be married and the parties
cohabitate and have a reputation in the community as husband
and wife, the inquiry ends there; a common law marriage has been
established.  Further, any actions taken (or not taken) by the

parties after those essential factors are established are legally

irrelevant.

COLORADO COURT OF APPEALS **2019COA25**

Court of Appeals No. 17CA1996
Arapahoe County District Court No. 16PR30546
Honorable H. Clay Hurst, Magistrate

In re the Estate of Viacheslav Yudkin, deceased.

Tatsiana Dareuskaya,

Appellant,

v.

Svetlana Shtutman,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BERGER
Taubman and Tow, JJ., concur

Announced February 21, 2019

Bell & Pollock, P.C., Bradley P. Pollock, Denver, Colorado, for Appellant

Law Office of Leonard R. Higdon, Leonard R. Higdon, Greenwood Village, Colorado, for Appellee

¶ 1    The decedent, Viacheslav Yudkin, died intestate. Appellant Tatsiana Dareuskaya (putative wife) claimed that she was the common law wife of the decedent and thus entitled to the decedent's property under the law of intestate succession. After an evidentiary hearing, the magistrate, sitting in probate, found that, even though the putative spouses agreed to be married; cohabitated for eight years; and had a reputation in their community as a married couple, no common law marriage existed because they did not file joint tax returns and other indicia of a common law marriage were absent. Because we conclude the magistrate misapplied the controlling law set forth in *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987), we reverse his order, direct entry of a decree of common law marriage, and remand for further proceedings.[1]

---

[1] We have appellate jurisdiction because the parties consented to the magistrate's authority. "A magistrate's order in a civil matter, entered with the parties' consent, is subject to the expedited appellate procedure set forth in C.R.M. 7(b) and therefore may be appealed directly to this court." *In re Marriage of Phelps*, 74 P.3d 506, 508 (Colo. App. 2003).

## I.    Relevant Facts And Procedural History

¶ 2    Decedent died on March 25, 2016, without a will. At the time of his death, he, putative wife, and her two children had been living together for eight years. For the five years before his death, they lived in a house in Aurora that was deeded to and titled in decedent's name. Although they maintained separate bank accounts, both decedent and putative wife contributed financially to the household — including mortgage payments on the house.

¶ 3    The couple did not jointly own any real property or vehicles, but they purchased a single auto insurance policy that insured both of them. Putative wife was also listed as an insured spouse/domestic partner on decedent's dental insurance plan. They did not file joint federal or state tax returns; putative wife filed as either "head of household" or "single," depending on the year. Neither putative wife nor her minor children took decedent's surname, but decedent introduced the children to others as his own.

¶ 4    A few months after his death, decedent's ex-wife, Svetlana Shtutman (who is the mother of his only biological child), sought informal appointment as the personal representative of his estate.

No notice of this application was given to putative wife. After Shtutman was appointed as personal representative, putative wife objected, claiming that she was decedent's common law wife and therefore had priority as the personal representative of his estate. The magistrate held a hearing on putative wife's claims.

¶ 5   The magistrate heard testimony from fourteen witnesses, twelve of whom testified that they understood that decedent and putative wife were married. Most testified that they did not know the two were not ceremonially married until they were asked to testify at the hearing. The only witnesses who *did not* testify that the couple were married were Shtutman and decedent's father — who testified that he did not pay attention to his son's relationships.

¶ 6   After the hearing, the magistrate made written findings of fact and conclusions of law. He concluded that putative wife had not met her burden to prove a common law marriage under the test set forth in *Lucero*, 747 P.2d 660. The magistrate found the fact that decedent and putative wife did not jointly file taxes to be the "most convincing" evidence of the fact that they were not common law married.

¶ 7     Putative wife appeals, arguing that the magistrate erred in (1) concluding a common law marriage did not exist despite finding that the couple cohabitated and had a reputation in the community as married; (2) failing to find that putative wife had a pecuniary interest in the Aurora property;[2] and (3) failing to find that decedent wore a wedding ring.[3]

## II.     The Magistrate Misapplied *Lucero*

¶ 8     Whether a common law marriage exists turns on issues of fact and credibility. *In re Custody of Nugent*, 955 P.2d 584, 588 (Colo. App. 1997). "Accordingly, we review the [magistrate's] factual findings for clear error and [his] common law marriage determination based on those findings for an abuse of discretion." *In re Marriage of Hogsett*, 2018 COA 176, ¶ 15. "A [magistrate] abuses [his] discretion where [his] ruling is 'manifestly arbitrary,

---

[2] Nothing in the record indicates that putative wife ever pleaded that an equitable lien (or other interest) be impressed on any of the decedent's property. Therefore, we do not further address this "claim" although we consider the circumstances surrounding the house as part of the common law marriage inquiry.

[3] To the extent putative wife presents this as a claim independent of her common law marriage claim, we reject it for the same reason we reject any claim to impress an interest on the marital residence. *See supra* note 2. However, we consider it as relevant to the common law marriage inquiry.

unreasonable, or unfair,' or where it is based on an erroneous view of the law." *People v. Elmarr*, 2015 CO 53, ¶ 20 (citations omitted).

¶ 9     In *Lucero,* the supreme court held that "[a] common law marriage is established by the mutual consent or agreement of the parties to be husband and wife, followed by a mutual and open assumption of a marital relationship." 747 P.2d at 663. Because an agreement to marry is not always explicit, the existence of an agreement may be inferred from the parties' conduct. *Id.* at 664. But an agreement alone is not sufficient — it must be accompanied by "conduct in a form of mutual public acknowledgment of the marital relationship." *Id.* at 663.

¶ 10    Most importantly for our purposes, the supreme court stated:

> *The two factors that most clearly show an intention to be married are cohabitation and a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife.* Specific behavior that may be considered includes maintenance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman; the use of the man's surname by children born to the parties; and the filing of joint tax returns.

*Id.* at 665 (emphasis added) (citations omitted).

¶ 11     We understand *Lucero* to mean that if there is an agreement to be married and the two essential factors — cohabitation and a reputation in the community as husband and wife — are met, the inquiry ends there; a common law marriage has been established. When the two essential factors are not "clearly" established, a court may consider "specific behavior" of the parties, such as the filing of tax returns.  But, if the essential factors are met, the inquiry ends.

¶ 12     Our interpretation is supported by the plain language of *Lucero.*  The supreme court described cohabitation and reputation in the community as "[t]he two factors that most clearly show an intention to be married."  *Id.*  Joint bank accounts, joint property ownership, and joint tax returns, however, are "specific behavior" that the court *may* consider in reaching its ultimate conclusion.  *Id.*

¶ 13     The magistrate specifically found that decedent and putative wife agreed to be husband and wife.  He also found that the two essential factors — cohabitation and a reputation in the community as husband and wife — were established.  The evidence on those points was overwhelming.

¶ 14 Despite these dispositive findings made by the magistrate under *Lucero*, the magistrate nevertheless held that there was no common law marriage, explaining:

> [T]he court is convinced that although Mr. Yudkin and Tatsiana A. Dareuskaya loved each other, agreed to and did cohabitated [sic] for 8 years and held themselves out to their co-workers, friends and neighbors as married they were not at the time of Mr. Yudkin's death Common Law Married based specifically on the facts that they did not maintain joint banking or credit account(s); they did not purchase and jointly own any vehicles or real property; Tatsiana A. Dareuskaya did not use Mr. Yudkin's surname; the children of the Parties did not use the other party's surname nor were any child(ren) born between the Parties to take the surname; and most convincing is they failed to file any joint Federal or State Tax Returns during the 8 years they were living together including for 2015 which was the last full tax year the Parties were still living together.

¶ 15 Once the magistrate determined, as he did, that decedent and putative wife agreed to be married, cohabitated, and had a reputation in their community as husband and wife, the inquiry should have ended, and the magistrate was compelled to enter a decree of common law marriage.

¶ 16    As well, any actions taken (or not taken) by the parties not bearing on the essential factors are, if the essential factors are established, legally irrelevant.[4]

¶ 17    Under the facts presented, the magistrate's determination that no common law marriage had been proven was an abuse of discretion.

¶ 18    Because the magistrate found that all of the elements of common law marriage required by *Lucero* existed, the magistrate had no discretion other than to enter a decree of common law marriage.  We remand for the magistrate to do so.

### III.    Conclusion

¶ 19    The magistrate's order rejecting putative wife's claim of a common law marriage is reversed.  On remand the magistrate is directed to enter a decree of common law marriage, and the case is remanded for further proceedings in probate.

JUDGE TAUBMAN and JUDGE TOW concur

---

[4] A contrary conclusion might dictate the existence of common law divorce.  However, Colorado does not recognize common law divorce; the only method for dissolving a marriage, whether ceremonial or common law, is through an action under the Uniform Dissolution of Marriage Act, sections 14-10-101 to -133, C.R.S. 2018.