The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 23, 2020

## 2020COA115

**No. 19CA1375 *Parental Responsibilities Concerning D.P.G.* —**

**Family Law — Marriage and Rights of Married Persons —**

**Putative Spouse**

A division of the court of appeals considers whether a party
may attain putative spouse status under section 14-2-111, C.R.S.
2019, after a magistrate determined that no common law marriage
existed. The division concludes that the putative spouse statute
does not apply because the absence of a common law marriage is
not an impediment to the existence of a legal marriage. Thus, the
division affirms the district court's order adopting the magistrate's
order denying the motion to amend a pleading to add the putative
spouse claim.

The division also concludes that the magistrate and the district court abused their discretion in awarding attorney fees and costs pursuant to sections 13-17-101 and 13-17-102, C.R.S. 2019, because the appellant, although unsuccessful, presented an arguably meritorious legal theory on an issue of first impression in Colorado.

COLORADO COURT OF APPEALS     **2020COA115**

Court of Appeals No. 19CA1375
Mesa County District Court No. 18DR30130
Honorable Valerie J. Robison, Judge

In re the Parental Responsibilities Concerning D.P.G., a Child,

and Concerning Patrick Goldsworthy,

Appellee,

and

Tammy Tatarcuk,

Appellant.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART

Division VI
Opinion by JUDGE YUN
Richman and Dunn, JJ., concur

Announced July 23, 2020

Catherine C. Burkey P.C., Catherine C. Burkey, Grand Junction, Colorado, for
Appellee

Feather Legal Services P.C., Gerald B. Feather, Grand Junction, Colorado, for
Appellant

¶ 1 Tammy Tatarcuk believed that she and Patrick Goldsworthy were common law married. A magistrate, however, determined that no common law marriage existed. In response, Ms. Tatarcuk attempted to attain putative spouse status under section 14-2-111, C.R.S. 2019, which allows a party, under certain circumstances, to obtain spousal rights even though no legal marriage existed. The magistrate denied her request, and the district court adopted the magistrate's order.

¶ 2 This appeal raises a novel issue: May a party attain putative spouse status after a court determines that no common law marriage existed? We say no. The putative spouse statute affords spousal rights when a marriage is invalid due to some impediment to the existence of a legal marriage, and the absence of a common law marriage is not such an impediment. We therefore affirm the district court's judgment with respect to the magistrate's denial of Ms. Tatarcuk's motion to amend her petition.

¶ 3 Ms. Tatarcuk also appeals the magistrate's and district court's rulings awarding attorney fees and costs to Mr. Goldsworthy. Because Ms. Tatarcuk's claim presented an arguably meritorious legal theory on an issue of first impression in Colorado, the

1

magistrate and the district court abused their discretion in awarding attorney fees and costs under sections 13-17-101 and 13-17-102, C.R.S. 2019. We reverse those portions of the judgment.

## I. Background

¶ 4 Ms. Tatarcuk and Mr. Goldsworthy lived together for over ten years and had a son, D.P.G.

¶ 5 After the relationship soured, Mr. Goldsworthy petitioned for an allocation of parental responsibilities. A month later, Ms. Tatarcuk initiated a dissolution of marriage proceeding, alleging that the two were common law married. Mr. Goldsworthy denied the existence of a marriage. The two cases were consolidated.

¶ 6 The magistrate held a hearing to determine whether a common law marriage existed. The magistrate acknowledged that some evidence showed that the parties cohabited and held themselves out as husband and wife, but he concluded that this evidence was insufficient to establish the existence of a common law marriage.

¶ 7 Ms. Tatarcuk did not challenge this determination. Instead, she moved to amend her petition, requesting maintenance and a division of the property and debt as a putative spouse under section

2

14-2-111. In her amended petition, Ms. Tatarcuk alleged that she had resided with Mr. Goldsworthy "for over 10 years under circumstances that at least caused [her] to believe in good faith that they were married."

¶ 8    The magistrate denied Ms. Tatarcuk's request. He explained that the right to claim putative spouse status under section 14-2-111 must be read in conjunction with section 14-2-110, C.R.S. 2019, which prohibits certain marriages, including (1) a marriage or civil union entered into before the dissolution of an earlier marriage or civil union; (2) a marriage between an ancestor and a descendant or between a brother and a sister; and (3) a marriage between an uncle and a niece or between an aunt and a nephew. The magistrate concluded that because Ms. Tatarcuk did not allege any facts showing she was an innocent spouse who had entered into a prohibited marriage, she had "no legal basis" to assert a claim as a putative spouse. The magistrate also granted Mr. Goldsworthy's request for attorney fees and costs under section "13-17-101" and later entered an award of $567.50.

¶ 9    Ms. Tatarcuk petitioned the district court to review the magistrate's orders. The district court determined that, while

putative spouse status is not limited to the prohibited marriages listed in section 14-2-110, that statute must be read in conjunction with the putative spouse statute. It then concluded that the putative spouse statute "was not designed to provide a party that has received an adverse ruling on the existence of a common law marriage, to have a second bite of the proverbial apple." And it adopted the magistrate's determination denying the motion to amend.

¶ 10     The district court also considered Ms. Tatarcuk's claim that "no basis" existed for the magistrate's award of attorney fees and costs. The court noted that Ms. Tatarcuk filed her petition for review before the magistrate entered a final order determining the amount of the attorney fees and costs and that she did not seek review of the final order. The court recognized, however, that Ms. Tatarcuk did not object to the amount requested by Mr. Goldsworthy, and it concluded that, given the record support for the magistrate's order, the decision to award attorney fees and costs was appropriate.

¶ 11     Last, the court granted Mr. Goldsworthy's request for attorney fees and costs incurred in connection with Ms. Tatarcuk's petition

4

for review of the magistrate's order.  It found that the petition

lacked substantial justification because Ms. Tatarcuk's putative

spouse claim had "no legal or factual basis in this case, particularly

after the unchallenged finding that the parties did not have a valid

common law marriage."  The court ordered Ms. Tatarcuk to pay

Mr. Goldsworthy an additional $385.50 in attorney fees and costs.

¶ 12    Ms. Tatarcuk now appeals.

## II.    Adequacy of Opening Brief

¶ 13    As an initial matter, Mr. Goldsworthy argues that we should

strike Ms. Tatarcuk's opening brief because it does not comply with

the appellate rules.  Specifically, he asserts that her brief does not

state, under a separate heading before each issue, (1) the applicable

standard of review with citation to supporting legal authority and

(2) whether the issue was preserved and the precise location where

the issue was raised and ruled on in the record.  *See* C.A.R.

28(a)(7)(A).

¶ 14    While Ms. Tatarcuk did not fully comply with this requirement,

the deficiencies in her brief do not hamper our ability to conduct a

meaningful appellate review.  *See Martin v. Essrig*, 277 P.3d 857,

861 (Colo. App. 2011) (stating that an appellate court will consider

5

the level of noncompliance with the appellate rules in deciding whether to impose sanctions); *Bruce v. City of Colorado Springs*, 252 P.3d 30, 32 (Colo. App. 2010) (considering the merits despite a party's noncompliant brief). In the interest of judicial economy, we decline to strike Ms. Tatarcuk's brief. *See People v. Durapau*, 280 P.3d 42, 50 (Colo. App. 2011).

### III. Standard of Review

¶ 15 Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Marriage of Dean*, 2017 COA 51, ¶ 8. We review de novo the district court's and magistrate's conclusions of law but accept the factual findings unless they are clearly erroneous. *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1132 (Colo. 2010).

¶ 16 Our review of a court's denial of a motion to amend, in turn, is generally limited to determining whether the court abused its discretion. *Gandy v. Williams*, 2019 COA 118, ¶ 14. But when the court denies the motion because the requested amendment is futile, the issue is a question of law that we review de novo. *Id.*

## IV. Putative Spouse

¶ 17    Ms. Tatarcuk contends that the facts and circumstances of this case fit squarely within the provisions of section 14-2-111 and, thus, that the district court and magistrate erred in denying her motion to add her putative spouse claim. We disagree.

¶ 18    A putative spouse is a "person who has cohabited with another to whom he or she is not legally married in the good faith belief that he or she was married to that person." § 14-2-111. A person's putative spouse status terminates when the person obtains "knowledge of the fact that he or she is not legally married." *Id.* A putative spouse has the same rights as a legal spouse, including the right to maintenance, "whether or not the marriage is prohibited under section 14-2-110, declared invalid, or otherwise terminated by court action." *Id.*

¶ 19    At first glance, the language of section 14-2-111 appears to support Ms. Tatarcuk's claim. She alleged that she cohabited with Mr. Goldsworthy and held a good faith belief that they were common law married until the magistrate found that no such marriage existed. But, as the district court noted, we cannot read section 14-2-111 in isolation. *See In re Marriage of Joel*, 2012 COA

128, ¶ 19 (recognizing that the marriage statutes must be read together and harmonized when possible).

¶ 20    Section 14-2-111 recognizes that putative spouse status may be invoked when a marriage is prohibited under section 14-2-110. *See, e.g., Combs v. Tibbitts*, 148 P.3d 430, 433 (Colo. App. 2006). These situations include marriages or civil unions entered into before the dissolution of a prior marriage or civil union and marriages between certain family members. *See* § 14-2-110(1)(a)-(c).

¶ 21    Section 14-2-111 also recognizes that a putative spouse claim may exist when a court invalidates a marriage. A court shall invalidate a marriage when a party (1) lacked capacity to consent to the marriage; (2) lacked the physical capacity to consummate the marriage; (3) was under age and did not have consent or judicial approval; (4) entered the marriage based on fraud; (5) entered the marriage under duress; or (6) entered the marriage as a jest or a dare. § 14-10-111(1)(a)-(f), C.R.S. 2019. A court shall also declare a marriage invalid when it is prohibited by law for the reasons provided in section 14-2-110. *See* § 14-10-111(1)(g).

¶ 22    While putative spouse status is not limited to the instances of

a prohibited marriage or an invalid marriage, we look to these

statutes to guide us in determining the scope of section 14-2-111.

*See Joel*, ¶ 19.  In doing so, and considering that "[s]ection

14-2-111 was enacted to protect innocent participants in

meretricious relationships and the children of those relationships,"

*People v. McGuire*, 751 P.2d 1011, 1012 (Colo. App. 1987), we

cannot agree with Ms. Tatarcuk that section 14-2-111 allows a

person to attain putative spouse status when she fails to establish

the existence of a common law marriage.  Rather, the putative

spouse statute seeks to afford spousal rights to an individual who

held a good faith belief that he or she was validly married to

another but, in fact, was not married due to some impediment that

prevented the existence of a legal marriage.  *See Williams v.*

*Fireman's Fund Ins. Co.*, 670 P.2d 453, 455 (Colo. App. 1983); *see*

*also Williams v. Williams*, 97 P.3d 1124, 1128 (Nev. 2004)

(explaining that a majority of states recognize the putative spouse

doctrine either through case law or statute and that it requires one

or both parties to have had a good faith belief that no impediment

to the marriage existed and that the marriage was valid and proper);

52 Am. Jur. 2d *Marriage* § 92, Westlaw (database updated May 2020) ("[A] 'putative marriage' is a matrimonial union which is contracted in good faith by at least one of the parties, but which is in fact invalid because of some legal infirmity or some impediment on the part of one or both parties.") (footnotes omitted).

¶ 23     Ms. Tatarcuk alleged no impediment to the existence of a valid marriage with Mr. Goldsworthy.  Rather, the parties did not engage in a marriage of any type.  Both statutory and common law marriages require the mutual consent or agreement of both parties to the creation of a marital relationship.  *See* § 14-2-104(1)(a), C.R.S. 2019 (providing that a valid marriage exists if, among other requirements, it is solemnized); § 14-2-109, C.R.S. 2019 (describing solemnization and registration of marriages); *see also People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987) ("A common law marriage is established by the mutual consent or agreement of the parties to be [married] . . . .").  A marriage cannot be created through the unilateral belief of one party, even if that party held a good faith belief that he or she was married.  *See Lucero*, 747 P.2d at 663; *see also In re Marriage of Hogsett*, 2018 COA 176, ¶ 20 ("[I]f one party to a purported common law marriage believes she is married, but the

10

other party does not, a marriage cannot be established.") (*cert. granted in part* Sept. 30, 2019).

¶ 24 Ms. Tatarcuk and Mr. Goldsworthy did not have a ceremonial marriage, and the magistrate determined that no common law marriage existed. Ms. Tatarcuk did not challenge the common law marriage determination or dispute the lack of a ceremonial marriage. *See* C.R.M. 7(a)(12) (stating that if timely district court review is not requested, a magistrate's determination becomes the district court's order and further appeal of the order is barred). The magistrate therefore did not "terminate[]" a marriage, "declare[ a marriage] invalid," or determine that a marriage was "prohibited under section 14-2-110." § 14-2-111. And there was no other impediment to the existence of a marriage. It just never existed. Thus, we conclude that the lack of a marital relationship, in any form, prevents Ms. Tatarcuk from obtaining spousal rights as a putative spouse under section 14-2-111.

¶ 25 And we are not persuaded that *In re Estate of Yudkin*, 2019 COA 25 (*cert. granted in part* Sept. 30, 2019), on which Ms. Tatarcuk relies, suggests that a party may attain putative spouse status following a court's determination that no common

11

law marriage existed. Although the division in that case referred to the parties as "putative spouses," *id.* at ¶ 1, *Yudkin* did not consider, let alone mention, section 14-2-111 or the rights of a putative spouse. It instead reviewed and ultimately reversed a magistrate's decision that no common law marriage existed. *Yudkin*, ¶¶ 13-18. *Yudkin* thus has no relevance to the issue presented here.

¶ 26 We therefore perceive no error in the district court's adoption of the magistrate's order denying Ms. Tatarcuk's motion to amend her petition.

## V. Attorney Fees and Costs Orders

¶ 27 Ms. Tatarcuk next contends that the district court erred in upholding the magistrate's award of attorney fees and costs and in imposing its own award of attorney fees and costs against her. We agree.

### A. Jurisdiction

¶ 28 To start, Mr. Goldsworthy argues that Ms. Tatarcuk's appeal of the magistrate's attorney fees and costs order is untimely and thus should be dismissed.

¶ 29    The district court may review only a final magistrate order. C.R.M. 7(a)(3); *see In re Marriage of Beatty*, 2012 COA 71, ¶ 8.  An order is final when it "fully resolves an issue or claim."  C.R.M. 7(a)(3); *see also Whiting-Turner Contracting Co. v. Guarantee Co. of N. Am. USA*, 2019 COA 44, ¶ 24 (recognizing that an attorney fees award is separately appealable from a judgment on the merits).

¶ 30    We may not review a magistrate's order unless a timely petition for review has been filed and decided by the district court. C.R.M. 7(a)(11); *see People v. S.X.G.*, 2012 CO 5, ¶ 2.  Seeking review prematurely, however, does not prevent a court's review when a final order on the issue is subsequently entered and cures the jurisdictional defect.  *See Musick v. Woznicki*, 136 P.3d 244, 246-47 (Colo. 2006); *1405 Hotel, LLC v. Colo. Econ. Dev. Comm'n*, 2015 COA 127, ¶¶ 33-34.

¶ 31    Ms. Tatarcuk filed her petition for district court review of the magistrate's denial of her motion to amend and decision to award attorney fees and costs before the magistrate entered a final order on attorney fees and costs, and she did not later petition for review of that final order.  But the magistrate entered his final order on attorney fees and costs before the district court ruled on

13

Ms. Tatarcuk's petition for review, which cured the jurisdictional defect. *See Musick,* 136 P.3d at 246-47. The district court then reviewed the final order and adopted it. *See* C.R.M. 7(a)(10). We thus do not agree with Mr. Goldsworthy that Ms. Tatarcuk's appeal of the attorney fees and costs order is untimely.

## B. Discussion

¶ 32 We review a court's determination of whether to award attorney fees for an abuse of discretion. *In re Marriage of Tognoni,* 313 P.3d 655, 660-61 (Colo. App. 2011). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Whiting-Turner Contracting Co.,* ¶ 56. "But we review de novo the legal analysis employed by a . . . court in reaching its decision on attorney fees." *Colo. Citizens for Ethics in Gov't v. Comm. for Am. Dream,* 187 P.3d 1207, 1220 (Colo. App. 2008).

¶ 33 A court may award attorney fees against a party who has brought a claim that lacked substantial justification — meaning, as relevant here, that it was substantially frivolous. *See* §§ 13-17-101, -102(4). A claim is frivolous when the proponent can present no rational argument based on the evidence or the law to

support the claim. *W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984).

¶ 34 "Meritorious actions that prove unsuccessful and good faith attempts to extend, modify, or reverse existing law are not frivolous." *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005). A court may not award attorney fees when a party "makes a good faith presentation of an arguably meritorious legal theory upon which no determinative authority in Colorado exists." *McCormick v. Bradley*, 870 P.2d 599, 608 (Colo. App. 1993); *accord Cruz v. Benine*, 984 P.2d 1173, 1181 (Colo. 1999).

¶ 35 No prior Colorado case directly addresses the issue presented by Ms. Tatarcuk — whether a party may seek putative spouse status following a court's determination that a common law marriage did not exist. In the absence of case law preventing such a claim, Ms. Tatarcuk argued that, under the plain language of section 14-2-111, she was entitled to amend her petition to seek relief as a putative spouse because she had cohabited with Mr. Goldsworthy and held a good faith belief that she was married to him. Given the circumstances and that no case specifically held

15

that relief was *not* appropriate under section 14-2-111, such an argument was not without merit.

¶ 36    Indeed, the merit of Ms. Tatarcuk's argument is evidenced by the fact that the magistrate and the district court disagreed on the reason for rejecting it. The magistrate relied on the lack of any factual allegation that Ms. Tatarcuk was an innocent spouse who had entered into a prohibited marriage under section 14-2-110. The district court, however, noted that the putative spouse statute was not limited to the specific instances listed in section 14-2-110 and, instead, concluded that a person could not attain putative spouse status after a determination that a common law marriage did not exist. And, as explained above, we resolve Ms. Tatarcuk's putative spouse claim on a slightly different rationale than either the district court or magistrate.

¶ 37    Ms. Tatarcuk thus presented a rational argument in support of her claim based on an arguably meritorious legal theory for which no determinative authority in Colorado existed. Although the magistrate, the district court, and we have rejected her argument, that does not mean it was frivolous. Accordingly, the record does not support the magistrate's and the district court's determinations

that Ms. Tatarcuk's attempt to amend her petition to add a putative spouse claim was frivolous, and we reverse their awards of attorney fees and costs.[1]

### VI.  Appellate Attorney Fees and Costs

¶ 38    Last, Mr. Goldsworthy requests an award of attorney fees and costs incurred on appeal under C.A.R. 39.1 and section 13-17-101 because, he argues, the appeal lacked substantial justification. Given our reversals of the magistrate's and the district court's awards of attorney fees and costs, we deny his request. *In re Marriage of Wright*, 2020 COA 11, ¶ 41; *see also Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Because a lawyer may present a supportable argument which is extremely unlikely to prevail on appeal, it cannot be said that an unsuccessful appeal is necessarily frivolous.").

---

[1] In addition, while the magistrate and the district court allowed Mr. Goldsworthy to recover costs under sections 13-17-101 and 13-17-102, C.R.S. 2019, those statutes provide only for an award of attorney fees, not costs.

17

## VII. Conclusion

¶ 39      We affirm the portion of the district court's judgment denying Ms. Tatarcuk's motion to amend and reverse the portions of the judgment awarding Mr. Goldsworthy attorney fees and costs.

JUDGE RICHMAN and JUDGE DUNN concur.