22CA2005 Marriage of Terry 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA2005 Broomfield County District Court No. 20DR30057 Honorable Sean Finn, Judge In re the Marriage of Frederick Terry, Appellant, and Michelle Terry, Appellee. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE J. JONES Harris and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Griffiths Law PC, Suzanne Griffiths, Christopher Griffiths, Kim Newton, Lone Tree, Colorado, for Appellant Ciancio Ciancio Brown, P.C., Cynthia L. Ciancio, Marc J. Kaplan, Melinda S. Moses, Denver, Colorado, for Appellee 
1 ¶ 1 In this dissolution of marriage case between Frederick Terry (husband) and Michelle Terry (wife), husband appeals those portions of the permanent orders concerning the property division. We affirm the judgment and remand the case for further proceedings concerning wife’s request for appellate attorney fees. I. Background ¶ 2 The parties married in 2003. At the time, husband was a beneficiary of the irrevocable Frederick S. Terry 2000 Trust (the Trust), which husband’s father, as the trustee, had previously established for husband’s benefit. Under the terms of the original trust agreement (the Trust Agreement), the trustee is afforded the discretion to pay husband, on an ongoing basis, as much of the Trust’s net income and principal as the trustee deems necessary for husband’s support, maintenance, health, and education. However, the Trust Agreement’s schedule of distributions also provides that the trustee “shall” distribute to husband one quarter of the Trust’s principal in 2015, an additional one quarter in 2025, and then all the Trust’s remaining property in 2035. The Trust Agreement further provides that the Trust is to be “interpreted for all purposes in accordance with Massachusetts law.” 
2 ¶ 3 In July 2020, husband petitioned to dissolve the parties’ marriage. Shortly thereafter, the trustee purported to amend the Trust via the First Amendment to Declaration of Trust for Frederick S. Terry 2000 Trust (the First Amendment). The First Amendment modified the remaining schedule of distributions by providing that the trustee “may,” as opposed to “shall,” make those distributions. ¶ 4 Husband filed a C.R.C.P. 56(h) motion for the determination of a question of law, seeking a declaration that the Trust, as amended, does not constitute property under the Uniform Dissolution of Marriage Act (UDMA), section 14-10-113, C.R.S. 2024. The district court, primarily applying Massachusetts law, including the Massachusetts statutes governing divorce, granted husband’s motion and ruled that the amended Trust is not property subject to division. ¶ 5 Wife filed a motion for reconsideration, and the district court reversed course, ruling instead that husband has a property interest in the Trust under section 14-10-113. The court reasoned that section 14-10-113, as opposed to the Massachusetts divorce statutes, governs the classification of husband’s interest in the Trust. Interpreting the Trust Agreement under Massachusetts law, 
3 the district court then held that the First Amendment is invalid. Accordingly, the court held that husband has a vested property interest in the Trust given that the trustee is required to make mandatory distributions to husband. ¶ 6 In the permanent orders, consistent with its prior conclusion that husband has a property interest in the Trust, the district court found that the $2,189,111 marital increase in the value of the Trust is marital property. However, given the trustee’s attempt to amend the Trust so as to avoid making mandatory distributions, the district court recognized that the trustee may resist further distributions to husband. Accordingly, the court reserved jurisdiction over the division of the Trust. But accounting for husband’s separate property interest in the original value of the Trust, the district court also ordered husband to pay wife 26% of any future, net distributions that he receives from the Trust. To correct a mathematical error, the parties later stipulated that husband is to pay wife 38% of any net Trust distributions that he receives. 
4 II. Husband’s Property Interest in the Trust ¶ 7 Husband contends that the district court erred by holding that his interest in the Trust constitutes property under section 14-10-
113. We disagree. A. Standards Governing a Property Division ¶ 8 A property division in a marital dissolution case requires two steps: first, the court must determine whether an interest constitutes “property” and then, if so, whether it is marital or separate property. In re Marriage of Balanson, 25 P.3d 28, 35 (Colo. 2001). The court must set aside the spouses’ separate property and then divide the marital property. § 14-10-113(1). Under section 14-10-113, subject to certain specified exceptions, all property acquired by either spouse during the marriage is presumed marital. In re Marriage of Vittetoe, 2016 COA 71, ¶ 18. Accordingly, marital property “does not include property that the spouses acquired before the marriage, or that they have agreed will remain separate.” In re Marriage of Corak, 2014 COA 147, ¶ 11 (citing § 14-10-113(2)-
(4)). However, the marital increase in the value of a spouse’s separate property is marital property subject to division. See In re 
5 Marriage of Mitchell, 55 P.3d 183, 185 (Colo. App. 2002); see also § 14-10-113(4). ¶ 9 The classification of property as marital or separate is a legal determination that is based on the district court’s factual findings. In re Marriage of Morton, 2016 COA 1, ¶ 5. We review the court’s factual findings for clear error but review the court’s resolutions of issues of law de novo. Martinez v. People, 2024 CO 6M, ¶ 24; C.R.C.P. 52. B. Trust Interests as Property ¶ 10 “[I]n determining whether a spouse’s interest constitutes property,” a court should “focus on whether the spouse has an enforceable right to receive a benefit.” In re Marriage of Cardona, 2014 CO 3, ¶ 26; see also Balanson, 25 P.3d at 35. Interests that are “speculative” are “mere expectancies” and don’t constitute property subject to division. Balanson, 25 P.3d at 35. ¶ 11 A discretionary trust is one in which income and principal from the trust are distributed to the beneficiary at the trustee’s uncontrolled discretion, with no remainder interest. In re Marriage of Jones, 812 P.2d 1152, 1155 (Colo. 1991). A beneficiary’s interest in such a trust is merely an expectancy that doesn’t rise to the level 
6 of property. Id. In contrast to the mere expectancy that a beneficiary has in a discretionary trust or one revocable by a third party, a beneficiary’s remainder interest in an irrevocable trust that is subject only to the condition of survivorship is a “certain, fixed interest[],” which constitutes property for purposes of section 14-
10-113. Balanson, 25 P.3d at 41. ¶ 12 We review de novo the district court’s interpretation of a trust. See In re Marriage of Young, 2021 COA 96, ¶ 9; see also Denver Found. v. Wells Fargo Bank, N.A., 163 P.3d 1116, 1122 (Colo. 2007) (the interpretation of a trust or will is a question of law subject to de novo review, and a court should “construe [a] [t]rust instrument[] in [its] entirety to harmonize and give effect to all the provisions, rendering none meaningless or superfluous”). ¶ 13 In this case, after invalidating the First Amendment, the district court classified husband’s interest in the Trust as a vested remainder interest given that the trustee is required to make future distributions to husband consisting of the remainder of the Trust’s income and property. Therefore, consistent with Balanson, 25 P.3d at 35, 41, and section 14-10-113(4), the court classified the marital appreciation of husband’s interest in the Trust as marital property. 
7 ¶ 14 Neither party disputes that under Balanson, 25 P.3d at 41, a party’s vested interest in an irrevocable trust generally constitutes property under the UDMA, and that, if acquired before the marriage, the marital appreciation in the value of that property interest constitutes marital property, see § 14-10-113(4). But husband argues that his interest in the Trust isn’t property because (1) the Trust Agreement is in fact amendable and therefore his interest isn’t property under an exception in section 14-10-
113(7)(b), and (2), under Massachusetts law, the First Amendment is valid and converted the Trust into a discretionary trust, which isn’t property. C. “Amendable” Under Section 14-10-113(7)(b) ¶ 15 We first consider and reject husband’s contention that the Trust, even in its pre-amended form, isn’t property under section 14-10-113(7)(b) because it is amendable. ¶ 16 Section 14-10-113(7)(b) provides that for purposes of dividing a marital estate, “property” shall not include . . . any interest under any donative third party instrument which is amendable or revocable, including but not limited to third-party wills, revocable trusts, life insurance, and retirement benefit 
8 instruments, nor shall any such interests be considered as an economic circumstance or other factor. ¶ 17 Article One of the Trust Agreement provides as follows: This Trust Agreement may not be revoked, amended or altered by any person. Under no circumstances shall any of the trust income or principal be payable to or revert to me or to my estate, nor shall I have any power, except in a fiduciary capacity, to control or direct the disposition of the trust property. But despite Article One’s prohibition on amendments, Article Five, paragraph F, carves out exceptions for three narrowly defined “Special Power[s] to Amend”: The independent Trustees, if any, may amend this Trust Agreement . . . provided that no such amendment shall have any effect except to the extent that it (i) clarifies the meaning or reference of an expression or provision of this instrument, (ii) changes or adds to the administrative provisions of this instrument, or (iii) results in greater conformity of this instrument to the applicable provisions of federal and state tax laws, in each case without any resulting material alteration of beneficial interests. ¶ 18 Relying on section 14-10-113(7)(b), husband argues that because the Trust can be amended under the “Special Power[s] to Amend,” the Trust is amendable and excepted from consideration 
9 as property, even though any amendments could not result in a “material alteration of beneficial interests.” Under his interpretation of section 14-10-113(7)(b), any permitted amendment to a trust, regardless of the amendment’s effect on the interests created by the trust, would remove a trust from consideration as property. But we don’t read section 14-10-113(7)(b) that way. ¶ 19 “Our main task in construing statutes is to ascertain and give effect to the intent of the General Assembly.” In re Marriage of Ikeler, 161 P.3d 663, 666 (Colo. 2007). We look first to the plain language of the statute to ascertain the legislature’s intent. Id. But when interpreting a statute such as the UDMA, we don’t read provisions in isolation. In re Parental Responsibilities Concerning D.P.G., 2020 COA 115, ¶ 19. Instead, we read all the provisions of the UDMA together, harmonizing them whenever possible. In re Marriage of Joel, 2012 COA 128, ¶ 19; see also Portercare Adventist Health Sys. v. Lego, 2012 CO 58, ¶ 12 (we construe words and phrases together and in context). “We presume that the legislature intends a just and reasonable result when it enacts a statute, and we will not read a statute to provide an unreasonable or absurd 
10 result.” In re Marriage of Roosa, 89 P.3d 524, 528 (Colo. App. 2004). ¶ 20 If the plain language is ambiguous or conflicts with other statutory provisions, we may look beyond the statute’s language to other factors, including the statute’s legislative history. § 2-4-203, C.R.S. 2024; Hice v. Giron, 2024 CO 9, ¶ 10. ¶ 21 In our view, the text of section 14-10-113(7)(b) is ambiguous because it can reasonably be read two ways. Under one interpretation, “amendable or revocable” refers to an interest under a donative third-party instrument, such as a trust agreement. By this reading, only if a party’s interest is itself amendable or revocable is the interest excluded from the definition of property. Under the second interpretation, as proposed by husband, “amendable or revocable” refers solely to the relevant donative third-party instrument, regardless of the nature of the amendment. See In re Marriage of Smith, 2024 COA 95, ¶ 23 (determining that section 14-10-113(7)(b) is ambiguous in this regard). ¶ 22 In Smith, ¶¶ 25-26, a division of this court recently resolved the ambiguity by holding that the statutory reference to “revocable” refers to interests under a donative third-party instrument rather 
11 than the instrument itself, for a number of reasons. We agree with the division’s analysis and don’t see any reason to treat the term “amendable” differently. ¶ 23 Therefore, we conclude that, under section 14-10-113(7)(b), permitted amendments that don’t materially affect a beneficiary’s vested interest in an irrevocable trust don’t exclude such a vested interest from consideration as property under section 14-10-113. Accordingly, even though the Trust is subject to the limited “Special Power[s] to Amend” in Article Five, paragraph F, because the permitted amendments may not alter any beneficial interests in the Trust, section 14-10-113(7)(b) doesn’t remove husband’s interest in the Trust from consideration as property. D. The First Amendment to the Trust and Massachusetts Law ¶ 24 Husband next argues that, notwithstanding the language in the Trust Agreement providing that it isn’t amendable, the Trust Agreement was in fact properly amended under Massachusetts law via the First Amendment, and therefore the district court erred by treating the amendment as ineffective. We disagree. ¶ 25 In support of his contention, husband relies primarily on Ferri v. Powell-Ferri, 72 N.E.3d 541, 545 (Mass. 2017). In Ferri, the 
12 Supreme Judicial Court of Massachusetts allowed the decanting of an irrevocable trust. Id. at 552.
1 The court said that [d]ecanting has the effect of “amend[ing] an unamendable trust, in the sense that [the trustee] may distribute the trust property to a second trust with terms that differ from those of the original trust.” The rationale underlying the authority to decant is that if a trustee has the discretionary power to distribute property to or for the benefit of the beneficiaries, the trustee likewise has the authority to distribute the property to another trust for the benefit of those same beneficiaries. Id. at 546 (citations omitted). The court said that whether an irrevocable trust could be decanted turned on the “language in the trust,” and the authority to decant need not be express but could exist based on “other trust language.” Id. Reviewing the language of the relevant trust agreement, the Ferri court relied heavily on a provision affording the trustee substantial discretion to “pay to or segregate irrevocably for later payment to [the beneficiary], so much 1 “Decanting is the term generally used to describe the distribution of [irrevocable] trust property to another trust pursuant to the trustee’s discretionary authority to make distributions to, or for the benefit of, one or more beneficiaries [of the original trust].” William R. Culp, Jr. & Briani Bennett Mellen, Trust Decanting: An Overview and Introduction to Creative Planning Opportunities, 45 Real Prop. Tr. & Est. L.J. 1, 2 (2010). 
13 of the net income and principal of this trust as [the trustee] shall deem desirable.” Id. at 547-48, 552. ¶ 26 We conclude that Ferri isn’t controlling, for several reasons. First, Ferri involved the decanting of an irrevocable trust, whereas in this case, the trustee attempted to amend a mandatory distribution schedule of the Trust, contrary to clear language in Article One providing that the Trust may not be amended. Next, Ferri doesn’t hold that irrevocable trusts may be decanted, revoked, or amended unconditionally, but instead instructs courts to examine the language of the trust instrument to determine what is permissible. Id. at 546. Notably, unlike in Ferri, there is no language in the Trust Agreement allowing the trustee to freely “segregate irrevocably” trust property, which was central to the Ferri court’s analysis. Id. at 547-48. ¶ 27 Moreover, Ferri explains that “[t]he rules of construction of a contract apply similarly to trusts; where the language of a trust is clear, we look only to that plain language,” with extrinsic evidence only relevant when a trust agreement is ambiguous. Id. at 545. And “[i]n determining the meaning of a contractual provision, the court will prefer an interpretation ‘which gives a reasonable, lawful 
14 and effective meaning to all manifestations of intention, rather than one which leaves a part of those manifestations unreasonable, unlawful or [of] no effect.’” Id. (quoting Siebe, Inc. v. Louis M. Gerson Co., 908 N.E.2d 819, 825 n.13 (Mass. App. Ct. 2009)). ¶ 28 Thus, applying Ferri, we also reject husband’s contention that the First Amendment, including the modification of the distribution schedule from mandatory to discretionary distributions, was proper because the trustee was acting in a “fiduciary capacity” under Article One of the Trust Agreement. Article Five, paragraph C, unambiguously provides that the trustee “shall not have the power to alter materially any beneficial interests,” and Article Five, paragraph F, likewise prohibits “material alteration[s] of beneficial interests.” To hold that the trustee has the power to change the distribution schedule from mandatory to discretionary under the guise of exercising a fiduciary duty would impermissibly give these prohibitions no effect. See id. In sum, we agree with the district court’s conclusion that the First Amendment to the Trust is invalid because it attempted to amend beneficial interests, contrary to the plain language of the Trust Agreement. 
15 III. Jurisdiction Over the Trust ¶ 29 Husband next contends that the district court lacked jurisdiction to determine the validity of the First Amendment. As we understand his argument, he says that because the trustee wasn’t joined as a party, the court couldn’t enter a ruling declaring the First Amendment invalid. Again, we disagree. ¶ 30 A party is indispensable and must be joined when that party “has such an interest in the controversy’s subject matter that a final decree . . . cannot be made without affecting the nonparty’s interests or leaving the controversy in such a situation that its final determination may be inequitable to the nonparty.” Bittle v. CAM-
Colo., LLC, 2012 COA 93, ¶ 14. Whether a party is indispensable depends on the facts of each case. Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Ests. Owners Ass’n, 214 P.3d 451, 456 (Colo. App. 2008). When the pertinent facts are undisputed, the ultimate conclusion becomes a question of law that we review de novo. See id. ¶ 31 The trustee didn’t need to be joined as a party. Contrary to husband’s argument, the district court’s orders didn’t adjudicate any rights of the Trust. True, the court determined that the First 
16 Amendment violated the original Trust Agreement, rendering the First Amendment a legal nullity for purposes of determining the parties’ property interests under the UDMA. But the court didn’t order the Trust or the trustee to take any action such as making a distribution to husband or wife. Instead, the district court ordered husband to convey to wife a percentage of the net distributions, if any, that he receives. Cf. Kaladic v. Kaladic, 589 P.2d 502, 505 (Colo. App. 1978) (“[A] court may not order a non-party trustee to convey trust assets in a domestic relations case unless that trustee is joined as a party.”); Fairway Pines, 214 P.3d at 454 (recognizing that a party whose interest in property isn’t affected by the proceeding doesn’t need to be joined). ¶ 32 The court merely addressed whether husband had an enforceable right to his interest in the Trust, a necessary consideration for determining whether that interest constituted property subject to the court’s division. See Balanson, 25 P.3d at 35 (recognizing that, in dividing the marital estate, the court must first determine whether an interest is property). So we reject husband’s argument that the trustee needed to be joined and that 
17 the district court otherwise lacked the jurisdiction to find that the First Amendment was invalid. IV. Spendthrift Clause ¶ 33 Lastly, we reject husband’s contention that the requirement that he pay wife a percentage of any net distributions that he receives violates the Trust’s spendthrift clause under both Massachusetts and Colorado law. ¶ 34 It is well established under Massachusetts law that a spendthrift clause doesn’t prevent the division of trust property as part of dividing a marital estate. See Lauricella v. Lauricella, 565 N.E.2d 436, 439 (Mass. 1991) (“The spendthrift clause is not a bar” to the equitable division of the “the husband’s beneficial interest in the trust property.”). ¶ 35 Nor has husband cited any Colorado authority suggesting that a spendthrift clause bars an order dividing a marital interest in a trust. And given that the UDMA broadly defines property, we decline to adopt such a position. See, e.g., Cardona, ¶ 13 (“[T]he legislature intended the term ‘property’ under the UDMA to be broadly inclusive.”); cf. Marc A. Chorney, The Continuing Evolution of Balanson: Trusts as Property in Divorce, 34 Colo. Law. 89, 92 
18 (June 2005) (spendthrift provisions restricting a creditor’s right to any trust assets typically don’t affect the analysis of whether beneficial interests in trusts constitute property). ¶ 36 Moreover, as to spendthrift clauses, both Massachusetts and Colorado statutes provide that “a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary.” Mass. Gen. Laws Ann. ch. 203E, § 502 (West 2012) (emphasis added); § 15-5-502(3), C.R.S. 2024 (emphasis added). The court’s permanent orders require husband to pay wife a percentage of his net distributions only after his receipt of the same. V. Appellate Attorney Fees ¶ 37 Wife requests an award of her appellate attorney fees under section 14-10-119, C.R.S. 2024. Because the district court is better equipped to determine the factual issues regarding the parties’ current financial resources, we remand the case for the district court to determine whether an award of appellate attorney fees under that section is appropriate. See In re Marriage of Alvis, 2019 COA 97, ¶ 30. 
19 VI. Disposition ¶ 38 The judgment is affirmed, and the case is remanded for further proceedings concerning wife’s request for appellate attorney fees. JUDGE HARRIS and JUDGE GOMEZ concur.