24CA0430 Estate of Petri 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0430
Adams County District Court No. 23PR30553
Honorable Sara Price, Magistrate

In re the Estate of Dennis Garth Petri, deceased.

Donna Strickland,

Appellant,

v.

Dianna Lee Mayo and Christopher Turner Esq. in his capacity as Special Administrator for the Estate of Dennis Garth Petri,

Appellees.

APPEAL DISMISSED IN PART, ORDER AFFIRMED,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Donna Strickland, Pro Se

Francis Law L.L.C., Rory L. Francis, Denver, Colorado, for Appellee Dianna Lee Mayo

Gantenbein Law Firm LLC, Keith Gantenbein Jr., Christopher Turner, Christopher Pike, Wheat Ridge, Colorado, for Appellee Christpher Turner Esq. in his capacity as Special Administrator for the Estate of Dennis Garth Petri

¶ 1 In this probate case, Donna Strickland challenges two district court magistrate orders — one granting Diana Lee Mayo's putative spouse claim for intestate distribution of decedent Dennis Garth Petri's estate and the other appointing Christopher Turner as special administrator over the estate. She also challenges payments made to Turner. We affirm as to the first order and dismiss the appeal with prejudice as to the second order and any challenge to the payments to the special administrator. We remand the case to the district court for a determination of appellees' reasonable attorney fees and costs incurred on appeal.

## I. Background

¶ 2 After the decedent died without a will, Strickland, the decedent's spouse of twenty years, applied for an informal appointment as personal representative. Mayo objected to the appointment, claiming that she had a common law marriage with the decedent, *see* § 14-2-109.5, C.R.S. 2024, or was, in the alternative, his putative spouse, *see* § 14-2-111, C.R.S. 2024. Mayo also alleged that, one day after the decedent's death, several of the decedent's relatives forcibly entered the decedent and Mayo's house,

took his personal property, changed the locks, and threw a Fourth of July party at the house.

¶ 3     Given Mayo's objection and trespass allegations, the magistrate appointed Turner to manage the decedent's estate until the court ruled on Mayo's marriage claims.

¶ 4     After an evidentiary hearing, the court denied Mayo's common law marriage claim, granted her putative spouse claim, and ordered that "Mayo shall be considered the decedent's legal spouse for the purposes of intestate distribution."  Turner remained the special administrator because Mayo didn't seek appointment as the estate's personal representative.

## II.    Discussion

¶ 5     Strickland contends that the magistrate erred by (1) misapplying the putative spouse statute; (2) exceeding her authority in ruling on Mayo's putative spouse claim; and (3) prematurely appointing Turner as special administrator.  She also contends that payments to Turner for his services as special administrator were unauthorized because of the improper appointment.  We address these contentions in turn.

### A. Putative Spouse Designation

¶ 6 Strickland first contends that the magistrate erred by finding that Mayo was a putative spouse under section 14-2-111 for purposes of intestate distribution. She argues that the putative spouse statute doesn't apply because Mayo and the decedent were never legally married. We reject this argument.

#### 1. Additional Facts

¶ 7 Strickland married the decedent in 2003, but they separated in 2005 when Strickland moved away from Colorado, resettled in another state, and eventually entered into a committed relationship with another individual. Strickland testified that she and the decedent knew about each other's committed relationships.

¶ 8 Mayo testified that she and the decedent started dating and cohabitating in 2018 and lived together in the same house most of the time. She didn't have concerns regarding the decedent's marital status because she believed that he had been married and divorced twice. Mayo said the decedent proposed to her in 2020 with an engagement ring, they both wore wedding bands, and they celebrated an anniversary.

¶ 9    Three disinterested witnesses testified to their belief that the decedent and Mayo were married because the couple cohabitated, referred to themselves as husband and wife, and wore wedding bands. In her order, the magistrate found these witnesses' testimony credible and persuasive but found the testimony of Strickland's daughter and the decedent's stepdaughter, on which Strickland relied, not credible.

## 2. Standard of Review

¶ 10    Strickland's first argument raises an issue of statutory construction. We review such questions de novo. *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2023 CO 23, ¶ 35.

## 3. Applicable Law

¶ 11    Colorado's statute defining a putative spouse provides, "A person who has cohabited with another to whom he or she is not legally married in the good faith belief that he or she was married to that person is a putative spouse . . . ." § 14-2-111. "A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of his or her status, whether or not the marriage is prohibited under section 14-2-110 . . . ." *Id.* Section 14-2-110(1)(a), C.R.S. 2024, prohibits, in

pertinent part, "[a] marriage entered into prior to the dissolution of an earlier marriage of one of the parties."

¶ 12    In interpreting these statutes, we seek to effectuate the General Assembly's intent and apply words and phrases according to their plain and ordinary meanings.  *Ctr. for Excellence in Higher Educ.*, ¶ 35.  We also "read the statutory scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts."  *Id.* If we perceive no ambiguity in the statutory language, we apply it as written.  *Id.*

### 4.    Analysis

¶ 13    By its plain terms, section 14-2-111 doesn't require the existence of a valid marriage between the putative spouse and the person to whom she believes she is married (or the lack of a valid marriage between that person and a third person) for one to qualify as a putative spouse.  Instead, the statute confers the rights associated with a valid marriage on a putative spouse when (1) she cohabitated with a person "to whom . . . she is *not* legally married"; (2) she had "the good faith belief that . . . she was married to that person"; and (3) there is some legal impediment to a legal marriage between the putative spouse and the other person.  § 14-2-111

5

(emphasis added); *see In re Parental Responsibilities Concerning D.P.G.*, 2020 COA 115, ¶¶ 17-23; *Williams v. Fireman's Fund Ins. Co.*, 670 P.2d 453, 455 (Colo. App. 1983).

¶ 14     Strickland's reliance on *In re Parental Responsibilities Concerning D.P.G.* is misplaced.  In that case, a party asserted that she had a common law marriage, which the other party — the purported spouse — denied.  2020 COA 115, ¶¶ 5-6.  A magistrate concluded that the evidence was insufficient to establish the existence of a common law marriage.  *Id.* at ¶ 6.  In response, the party asserting the common law marriage contended that the putative spouse statute nevertheless entitled her to the rights associated with marriage.  *Id.* at ¶ 7.  The district court rejected her argument, ruling that the putative spouse statute didn't give her "a second bite of the proverbial apple."  *Id.* at ¶ 9.  A division of this court agreed, concluding that the absence of a common law marriage, *by itself*, isn't an impediment to marriage, as required by the relevant statutes.  *Id.* at ¶¶ 17-23.

¶ 15     But in this case, there was such an impediment — the decedent's existing legal marriage to Strickland.  *See* § 14-2-110(1)(a).  Indeed, it is that legal marriage that makes the

6

putative marriage statute applicable by its express terms. Thus, *In re Parental Responsibilities Concerning D.P.G.* is inapposite.

## B. Magistrate's Authority

¶ 16 Next, Strickland asserts — without supporting legal argument — that the magistrate lacked authority to rule on Mayo's putative spouse claim because that issue is "traditionally reserved for district court judges under Colorado law." We disagree.

### 1. Additional Facts

¶ 17 After Mayo objected to Strickland's appointment as personal representative, the magistrate provided the following notice to the parties:

> This matter may be assigned to a district court magistrate. Accordingly, all parties must consent to any decisions made in this matter being performed by a magistrate.

> Any objection to proceeding before the magistrate must be made in open court within 14 days or in writing, filed with the Court, and served upon the other interested parties within 14 days. *See* C.R.M[.] 3(f)(1)(A)(i), (ii). If an interested party does not object in accordance with Rule 3 or Rule 5 of the Colorado Rules for Magistrates, or if a party fails to appear for a hearing after being provided this notice, the party will have consented to the magistrate. CRM 3(f)(1)(A).

7

> Once given, a party's consent to a magistrate in a proceeding may not be withdrawn. C.R.M[.] 3(f)(1)(B).
>
> This notice is effective as of the date of this notice.

No party objected to the assignment.

### 2. Standard of Review and Applicable Law

¶ 18 We review jurisdictional issues concerning a magistrate's authority de novo. *In re Marriage of Vega*, 2021 COA 99, ¶ 13.[1] We also interpret magistrate rules de novo. *Andrews v. Miller*, 2019 COA 185, ¶ 7. In doing so, we apply the same principles that we apply when interpreting statutes. *See id.*

¶ 19 "A district court magistrate has only those powers provided by statute or court rule." *Id.* at ¶ 6 (first citing § 13-5-201(3), C.R.S. 2024; and then citing *In re R.G.B.*, 98 P.3d 958, 960 (Colo. App. 2004) (a magistrate is a hearing officer who acts with limited authority)). The Colorado Rules for Magistrates authorize magistrates to perform functions in varying types of legal cases. *Id.* (citing *Heotis v. Colo. Dep't of Educ.*, 2016 COA 6, ¶ 10).

---

[1] We construe Strickland's argument as one challenging the magistrate's jurisdiction. Such a challenge can be raised for the first time on appeal. *Black v. Black*, 2020 COA 64M, ¶ 90.

8

¶ 20     C.R.M. 6(e)(2)(A) provides that a magistrate may "[h]ear and rule upon all matters filed pursuant to" the probate statues with the parties' consent.  A party consents by either affirmatively consenting in writing or on the record, failing to object within fourteen days of receiving notice, or failing to appear after receiving notice.  C.R.M. 3(f)(1)(A).  With an exception not relevant in this case, C.R.M. 6(b)(1)(A) provides that a magistrate "shall have the power to preside over all proceedings arising under Title 14" — which obviously includes section 14-2-111 — without the parties' consent.

### 3.     Analysis

¶ 21     Under the magistrate rules, the magistrate was expressly authorized to decide Mayo's putative spouse claim because that matter was one "under Title 14."  And the magistrate didn't need any party's consent to do so.  Further, even if consent was required because the issue arose in the context of a probate case, Strickland consented to the magistrate's authority over intestate distribution under C.R.M. 3(f)(1)(A)(ii).  Nothing in the record shows that Strickland objected to the notice within two weeks — or indeed at any point.  On the contrary, her counsel filed several motions,

9

scheduled hearings, and filed a closing statement with the magistrate. And Strickland appeared at the magistrate's hearing on Mayo's putative spouse claim without objection.

¶ 22     In sum, the magistrate had jurisdiction to rule on the putative spouse claim. And, as noted, Strickland doesn't cite any legal authority for the proposition that a magistrate can't rule on such a claim.

### C.     Strickland's Other Contentions

#### 1.     Estate Apportionment

¶ 23     Strickland contends — for the first time in her reply brief — that the magistrate abused her discretion by failing to apportion any of the decedent's estate to Strickland. We don't consider arguments raised for the first time in a reply brief. *Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009).

#### 2.     Special Administrator's Appointment and Payments to Turner

¶ 24     Strickland also contends that the magistrate erred by appointing a special administrator to preserve the decedent's estate and secure its proper administration and that the appointment violated her due process rights. And Strickland contends that paying Turner was illegal.

¶ 25    But Strickland didn't appeal the order appointing the special administrator or any order authorizing payments to Turner.  Her notice of appeal only identified the magistrate's March 1, 2024, order granting Mayo's putative spouse claim as an order being appealed.  *See* C.A.R. 3(d)(2)(B).  Moreover, because the court didn't limit the special administrator's power, its order of August 22, 2023, appointing the special administrator was a final, appealable order.  *In re Estate of Franchs*, 722 P.2d 422, 423 (Colo. App. 1986).  Strickland didn't timely appeal that order.  Accordingly, we lack jurisdiction to address these contentions and dismiss Strickland's appeal with prejudice to the extent she seeks to appeal these rulings.  *See Amada Fam. Ltd. P'ship v. Pomeroy*, 2021 COA 73, ¶ 73.

### III.    Appellees' Attorney Fees and Costs

¶ 26    Under C.A.R. 38(b), we may award attorney fees and single or double costs to an appellee if we determine that an appeal is frivolous.  Strickland's appeal is frivolous as argued.  *See Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).  Her briefs fail to set forth a coherent assertion of error supported by legal

11

authority. *See id.* And her briefs challenge rulings relating to the special administrator as to which she filed no notice of appeal.

¶ 27    We therefore award appellees, including the special administrator,[2] their reasonable attorney fees incurred on appeal and double costs incurred on appeal. We exercise our discretion under C.A.R. 39.1 to remand the case to the district court to determine the reasonable amounts of those fees and costs.

## IV.    Disposition

¶ 28    The district court magistrate's order finding that Mayo is a putative spouse is affirmed. The appeal is otherwise dismissed with prejudice. The case is remanded to the district court for it to determine appellees' reasonable attorney fees and costs incurred on appeal.

JUDGE BROWN and JUDGE YUN concur.

---

[2] By order of this court, the special administrator was allowed to participate in this appeal as an appellee.